UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/2/17

LOKAI HOLDINGS, LLC,

                Plaintiff,

-against-

TWIN TIGER USA, LLC, *et al.*,

                Defendants.

15cv9363 (ALC) (DF)

**OPINION AND ORDER**

**DEBRA FREEMAN, United States Magistrate Judge:**

Currently before this Court are a number of discovery disputes, raised by the parties through a series of letter motions. The motions identified below are resolved as follows:

## Motions Concerning the Deposition of Steven Izen
### (Dkts. 99, 137, 138)

By letter dated February 3, 2017, Defendants' counsel sought a pre-motion conference regarding, *inter alia*, Defendants' anticipated motion to compel the continuation of the deposition of Steven Izen ("Izen"), Plaintiff's founder and principal. (Dkt. 99.) This Court held a telephone conference with counsel on February 8, 2017 (*see* Transcript (Dkt. 112)), during which Defendants' counsel clarified that Defendants were not seeking to ask further questions of Izen in his individual capacity, but only in his capacity as Plaintiff's designated corporate representative under Rule 30(b)(6) of the Federal Rules of Civil Procedure. For that matter, Defendants' counsel clarified that Defendants were not necessarily seeking to compel *Izen* to appear for further deposition questioning, but rather a "properly prepared corporate designee as to the topics that [Defendants had] noticed." (*Id.*, at 40; *see also id.* (the Court: "You're not looking for more time for the individual; you're looking for more time on 30(b)(6) topics?" Mr. Shaw (counsel for Defendants): "Correct.").) After hearing oral argument from counsel,

this Court granted Defendants' request to continue the Rule 30(b)(6) deposition of Izen (or an alternate corporate designee) for another three hours – plus additional time, if needed by Plaintiff for reasonable cross-examination. (*See id.*, at 66, 96; *see also id.*, at 59-60 (making clear that this would be a Rule 30(b)(6) deposition).) This Court also cautioned counsel for both sides, at length, regarding the conduct that it expected to see (and that it did *not* expect to see) during the continued deposition. (*See generally id.*, at 51-67.)

On April 24, 2017, Defendants' counsel wrote to this Court again (Dkt. 137), stating that, earlier that day, Defendants had attempted to continue the deposition in question in accordance with the Court's ruling at the February 8 conference (with Izen again appearing as Plaintiff's designated corporate witness), but that both Izen and Plaintiff's counsel had been obstructionist, leading Defendants' counsel to "close[] the deposition in order to bring a motion" (*id.*, at 2). Defendants sought an order from this Court (a) compelling the further continuation of the deposition in my Courtroom, under Court supervision, (b) requiring Plaintiff's counsel "to fully reimburse Defendants for costs and fees incurred as a result of their improper conduct," and (c) "formally reprimand[ing] Plaintiff's counsel." (*Id.*, at 3.) As an alternative to Court supervision, Defendants proposed the appointment of a "discovery referee to supervise the deposition." (Dkt. 139, at 1.)

On April 25, 2017, Plaintiff's counsel wrote to this Court (Dkt. 138), providing a different version as to what had occurred at the continued deposition. According to Plaintiff's counsel, Izen was "well prepared for three hours of additional questions," but Defendants' counsel "ended the deposition by theatrically storming out . . . after only twelve minutes, mostly comprised of badgering and harassing Mr. Izen." (*Id.*, at 1 (emphasis omitted).) Plaintiff requested that this Court (a) enter a protective order preventing the deposition from being

2

continued further, and (b) awarding sanctions against Defendants and their counsel in the amount of the attorneys' fees expended by Plaintiff in preparing for the "terminated" deposition, traveling to and attending the deposition, and bringing the motion. (*Id.*)

Having reviewed the transcript of the April 24 continued deposition (Dkt. 138-1), this Court finds the conduct of all participants to be lacking. The witness, Izen, was plainly evasive, failing repeatedly to give direct responses to straightforward questions. Plaintiff's counsel, in turn, took inadequate steps to address the witness's evasiveness, made improper objections, and wrongly directed the witness not to answer questions that did not call for the disclosure of privileged communications. Defendants' counsel, however, made improper statements to the witness (seemingly challenging the witness to disregard his counsel's instructions), and ended the deposition in an unnecessarily abrupt fashion, rather than trying to maximize the use of the time allotted for the deposition and conserve resources. Under the circumstances, it is hereby ORDERED that:

1. Plaintiff is directed, once again, to produce Izen (or an alternate Rule 30(b)(6) witness) for three hours of continued deposition questioning by Defendants. This continued deposition shall be conducted within 30 days of the date of this Order, on a date to be agreed by the parties.

2. Given that all participants in the last (attempted) deposition share at least some blame for its going rapidly off track, this Court will not impose any sanctions – including any shifting of costs – at this time, nor will this Court require the continued deposition to be held in the Courthouse, supervise it directly, or appoint a referee to supervise it. Counsel are members of the bar and are considered officers of the Court, and this Court will not accept that they are incapable of acting professionally without such oversight. Nonetheless, the witness and all

3

counsel are cautioned that this Court will no longer tolerate evasive, obstructionist, improper, or unprofessional conduct. If, upon completion of the deposition, any counsel believes that the witness or opposing counsel engaged in such conduct, then counsel may submit the new transcript to this Court, and, if this Court agrees, it will strongly consider imposing sanctions at that time.

## Motions Concerning Subpoenas Served on Plaintiff's Counsel and Related Privilege Issues (Dkts. 116, 129, 130)

By letter dated March 17, 2017 (Dkt. 116), Plaintiff's counsel moved to quash deposition and document subpoenas served by Defendants on Plaintiff's current and former attorneys – Ronald Bienstock, Esq. ("Bienstock") and David M. Perry, Esq. ("Perry"), respectively – who had been involved with certain applications for trade-dress registrations made by Plaintiff in the United States Patent and Trademark Office (the "PTO"). According to Plaintiff, the subpoenas called for the disclosure of matter protected by the attorney-client privilege, and therefore this Court was required to quash the subpoenas under Rule 45(d)(3) of the Federal Rules of Civil Procedure. Defendants responded by arguing that the subpoenas properly sought discoverable information that was either non-privileged that would likely fall within the "crime-fraud exception" to privilege. (*See* Dkts. 120, 121, 122.) This Court considered the motion and opposition, as well as Plaintiff's reply (Dkt. 123), and Defendants' sur-reply (Dkt. 124), and held a telephone conference with counsel on March 27, 2017 to address the issues raised (*see* Transcript (Dkt. 152)).

In brief, Defendants pointed out that, at different times, in connection with seeking both trade-dress registration and also a design patent for the beaded bracelets that are the focus of this litigation, Plaintiff provided to the PTO different dates for Plaintiff's supposed "first use in

4

commerce" of its bracelets. Defendants suspect that Plaintiff did this deliberately, with fraudulent intent. (*See generally* Dkt. 120.) Specifically, Defendants surmise that Plaintiff provided an *earlier* (2010) date for such "first use" in connection with its initial efforts to register its bracelet design as trade dress, as an early first-use date would have helped Plaintiff to establish the "secondary meaning" necessary to obtain the trade-dress registration. (*See* Dkt. 152, at 9-10.) Defendants further surmise that Plaintiff provided a *later* (2013) date for its first use of its bracelets in connection with its design-patent application, as the earlier date – which was more than one year prior to the effective filing date of the patent application – would have precluded it from obtaining the desired patent. (*See id.*, at 10-11.) Plaintiff, which now asserts that the 2010 date was "not accurate" (*id.*, at 7), eventually abandoned its initial trade-dress application and refiled a new application, stating a 2013 first-use date that matched the date put forward in Plaintiff's patent application (*see* Dkt. 120, at 9-10; Dkt. 123, at 3-4). Consistent with this, Izen has apparently now given deposition testimony in this case that the 2013 first-use date is correct, and that Plaintiff had provided the 2010 date to the PTO in error. (*See* Dkt. 120, at 11.)

Given the several verified declarations originally filed by Plaintiff with the PTO that represented the supposed 2010 first-use date – including declarations made after the PTO specifically sought clarification on the date issue – Defendants question the veracity of Izen's current testimony that the statements of such early use were merely mistaken. Indeed, facing a patent-infringement claim in this case, Defendants counterclaimed for a declaratory judgment of patent invalidity, relying, at least in part, on Plaintiff's multiple prior statements to the PTO as grounds for alleging that Plaintiff's bracelet design had been in public use, on sale, or otherwise made available to the public more than a year before the effective filing date of Plaintiff's

5

claimed invention. As the date of first use was clearly central to that counterclaim, Defendants sought discovery regarding it, and when Izen denied providing the supposedly "incorrect" 2010 first-use date to the attorneys who had filed declarations with the PTO citing that date, Defendants served the subpoenas at issue, seeking discovery from the attorneys regarding the source of the factual information they had passed on to the PTO.

In its March 27 telephone conference with counsel regarding the subpoenas, this Court instructed Plaintiff to review its position that all of the subpoenaed documents were protected by attorney-client privilege. This Court reasoned that factual information provided by Plaintiff to its counsel, with the understanding that it would be provided, in turn, to the PTO (which, as noted above, had made specific inquiry of Plaintiff regarding the first-use date), could not be considered to have been provided to counsel with an expectation of confidentiality, and thus would not be privileged. This Court further ruled that, if Plaintiff continued to take the position that all requested documents were properly withheld as privileged, then this Court would review a sample of the documents *in camera*, prior to determining whether the requested attorney depositions should go forward.

A mere three days after this Court made these rulings, Plaintiff apparently advised Defendants that it wished to "streamline" this case by voluntarily dismissing its patent-infringement claim (*see* Dkt. 128), and, on April 5, 2017, Plaintiff proceeded to provide Defendants with a Covenant Not To Sue regarding Plaintiff's design patent (*see* Dkt. 129). Not only did this necessitate the termination of Plaintiff's patent-infringement claim against Defendants,[1] but it effectively mooted Defendants' counterclaim for a declaration of patent

---

[1] The parties have disputed the proper mechanism for terminating Plaintiff's patent claim in view of the Covenant Not To Sue, but it is this Court's understanding that Judge Carter has

6

invalidity, and, according to Plaintiff, simultaneously mooted any need for discovery regarding statements made to the PTO that may have led to the issuance of that patent. (*See id.*) Thus, Plaintiff – which had continued to withhold from production any attorney-client communications relating to the statements made to the PTO on the subject of first use – asked to be relieved from any obligation to submit any such communications to this Court for *in camera* review. (*Id.*; *see also* Dkt. 135.) Defendants, though, have now taken the position that, even if the patent claims and counterclaims are excised from the case, the attorney subpoenas still call for relevant and discoverable information, and should still be enforced. (Dkt. 130; *see also* Dkt. 132.)

Essentially, Defendants have advanced three arguments as to why the requested discovery remains relevant and proportionate to the needs of the case. First, Defendants argue that, if they can demonstrate through discovery that – as they suspect – Plaintiff obtained its patent through perpetrating a fraud on the PTO (and if Plaintiff's principal, Izen, then lied about it under oath in this litigation), then Defendants would have the basis for seeking an award of the attorneys' fees they incurred in defending against that claim, prior to Plaintiff's voluntary dropping the claim from the case. (*See* Dkt. 130, at 2-3 (arguing that evidence of fraud and litigation misconduct could establish that the case was "exceptional," thereby providing a basis for fees under 35 U.S.C. § 285); Dkt. 132, at 2 (same).) Second, Defendants argue that the requested discovery would bear, in particular, on Izen's credibility, as Defendants anticipate that Izen's communications with counsel regarding the bracelets' first-use date, during the period of Plaintiff's prosecution of its trade-dress applications, would show that he made prior statements that are inconsistent with his deposition testimony, and, potentially, that he deliberately perjured

---

now directed Plaintiff to move to amend its pleading to drop the claim, under Rule 15 of the Federal Rules of Civil Procedure.

7

himself at his deposition. (Dkt. 130, at 3-4; Dkt. 132, at 2.) Third, Defendants note that Plaintiff is still asserting claims for trade-dress infringement, unfair competition, and false advertising, and argue that, if Plaintiff originally tried to obtain trade-dress registrations "through deception," this could be found to constitute "unclean hands" and to preclude Plaintiff from recovering on those claims. (Dkt. 130, at 4; Dkt. 132, at 2.)

This Court does not find Defendants' first and third arguments to be sufficiently compelling to allow the discovery sought. As to Defendants' first argument, it is not clear that the Court will even entertain a motion by Defendants for attorneys' fees on Plaintiff's voluntarily dropped patent claim, and, in any event, this Court finds that discovery that would be relevant only as to a potential post-judgment fee application would not be proportionate to the current needs of the case. As to their third argument, Defendants have not offered any authority to support the proposition that Plaintiff's potential misconduct related to its trade-dress applications in the PTO – applications that apparently did not result in a registration, and thus do not underlie Plaintiff's current claims – could bar relief on those claims. Defendants' third argument, however, is more persuasive. Given Izen's apparent personal involvement with Plaintiff's purported distribution of sample bracelets in 2010, and the dates of certain emails between Izen and counsel (*see* Dkt. 130, at 5-7), Defendants have shown a reasonable likelihood that, during the period of Plaintiff's various trade-dress applications in the PTO, counsel would have consulted with Izen regarding the date of the bracelets' first use in commerce. Further, Defendants have made a sufficient showing that discovery of the communications between Izen and counsel during this time, on this subject, could bear on Izen's credibility. As Izen is a key witness in this case, this Court will allow some reasonably tailored discovery relating to his

credibility.[2] Accordingly, it is hereby ORDERED that Plaintiff's motion to quash the subpoenas served on its counsel is granted in part and denied in part, as follows:

1. No later than one week from the date of this Order,

   a. Plaintiff is directed to provide to this Court, for *in camera* review, all email communications listed on pages 5-7 of Defendants' letter to the Court of April 10, 2017 (Dkt. 130), to the extent such emails (a) are from Izen, (b) are to Izen (either directly or as a copy recipient), or (c) reference any statements made by Izen relating to the date(s) of the bracelets' distribution, sale, or other potential first use in commerce; and

   b. Unless duplicative with the above, Bienstock and Perry are directed to provide to this Court, for *in camera* review, all emails generated up to and including the dates of Bienstock's and Perry's last submissions to the PTO in connection with Plaintiff's applications for trade-dress registration, to the extent such emails constitute communications with Izen or refer to statements by Izen, relating to the date(s) of Plaintiff's bracelets' distribution, sale, or other potential first use in commerce.

2. As it is this Court's current view that the *in camera* review described above will be sufficient to enable this Court to identify discoverable evidence relevant to the credibility issue raised by Defendants, while minimizing the burden on the attorney witnesses and protecting privileged information, the subpoenas to Bienstock and Perry are quashed to the extent they seek deposition testimony from these witnesses. This Court, however, may revisit

---

[2] Although Defendants argue that the credibility of other of Plaintiff's witnesses may also be at issue (*see* Dkt. 130, at 4 (arguing that "Plaintiff cannot hide evidence affecting Steven Izen or other witnesses' credibility simply by abandoning part of its case")), Defendants have offered no evidence that any fact witness other than Izen has given testimony in this case that is in conflict with past representations made by Plaintiff to the PTO.

9

this ruling *sua sponte*, if the emails reviewed by this Court suggest that either attorney had pertinent, non-privileged oral communications with Izen, or if the reviewed emails raise further questions regarding the nature of Izen's relevant past statements or the truthfulness of his deposition testimony.

3. This Court makes no ruling at this time regarding the applicability of the attorney-client privilege to any specific emails that may be submitted to the Court for review, or as to the applicability of the crime-fraud exception to privilege. This Court will make such rulings as appropriate, following its *in camera* review of the submitted emails.

### Motion Concerning Adequacy of Plaintiff's Discovery Responses (Dkt. 134)

By letter dated April 11, 2017 (Dkt. 134), Defendants sought a pre-motion conference prior to bringing a motion to compel Plaintiff to provide further responses to written discovery demands. As Plaintiff pointed out in response (Dkt. 136), Defendants' letter did not specify the particular alleged deficiencies in Plaintiff's responses that Defendants sought to bring to this Court's attention. Nonetheless, in this particular instance, this Court will not require a pre-motion conference. Rather, it is hereby ORDERED that, to the extent that the parties still have a dispute regarding the adequacy of Plaintiff's responses:

1. Defendants may, within one week of the date of this Order, file a letter motion to compel. Any such motion should attach or quote the specific demands and responses at issue, summarize the parties' efforts to resolve or narrow the disputes, and explain why the requested information is relevant to the claims or defenses asserted in this case and proportional to the needs of the case.

2. Plaintiff may have one week to file an opposition to the motion.

3.      Defendants may have two days to file a reply.

## Motion Concerning Defendants' Subpoena
## To Third-Party Shadow Public Relations, Inc.
## (Dkt. 141)

By letter motion dated May 1, 2017 (Dkt. 141), Defendants moved to compel non-party Shadow Public Relations Inc. ("Shadow") to comply with a deposition and document subpoena dated March 9, 2017 (the "Subpoena") (Dkt. 142-4).[3] On May 2, 2017, this Court issued an Order directing Defendants to file proof of service of its motion on Shadow (Dkt. 143), and, on May 3, 2017, Defendants complied with that Order (Dkt. 146). Shadow then responded to the motion via a May 8, 2017 letter from its counsel. (Dkt. 148.) Defendants filed a reply (Dkt. 149), and, with permission from my Chambers, Shadow filed a sur-reply (Dkt. 151).

Defendants contend that the Subpoena calls for evidence relevant to Defendants' counterclaims against Plaintiff for false advertising and unfair competition. (*See* Dkt. 141.) According to Defendants, "Plaintiff paid celebrities to endorse its products without disclosing the existence of a material connection between Plaintiff and the paid endorsers, thereby [unlawfully] conveying the impression to consumers that the endorsements were objective" (*id.*, at 1-2), and Defendants believe that Shadow, to which Plaintiff paid a monthly fee for public relations services, "was directly involved in obtaining and publicizing the endorsements at issue" (*id.*, at 2). While Defendants' and Shadow's counsel squabble over whether Defendants' motion to compel was properly made, and give somewhat differing accounts of their efforts to "meet and confer" regarding the Subpoena (*see* Dkts. 148, 149, 151), the bottom line appears to be that (1) Shadow objects to the scope of the document requests contained in the Subpoena, on grounds

---

[3] This was the second subpoena served by Defendants on Shadow in connection with this case; the first subpoena, dated December 7, 2016 (Dkt. 142-1), was ultimately not pursued by Defendants and is not currently at issue (*see generally* Dkts. 141, 142).

11

of burden, confidentiality, relevance, and cost, and (2) while Shadow is willing to produce a witness to testify, counsel have had difficulty agreeing on a deposition date (*see generally* Dkt. 148). This Court having reviewed the submissions made by both Defendants and Shadow, it is hereby ORDERED that Defendants' motion to compel compliance is granted in part and denied in part, as follows:

1. This Court will not reject Defendants' motion to compel compliance on the procedural grounds raised by Shadow, but rather exercises its discretion to consider the motion on its merits.

2. To the extent the Subpoena seeks the production of communications between Plaintiff and Shadow, the motion to compel compliance is denied, without prejudice to renew upon a showing that Defendants have been unable to obtain such documents from Plaintiff.

3. To the extent that Shadow believes that confidentiality protection is warranted for any of its non-public contracts or other sensitive, competitive, or proprietary business information, all counsel are directed to confer in good faith and to propose a modification of the Protective Order currently in place in this action (Dkt. 50) that would afford appropriate protection to documents and information produced by Shadow. This proposal should be submitted to this Court no later than two weeks from the date of this Order.

4. Defendants' motion to compel Shadow to produce documents other than communications with Plaintiff (*see* paragraph 1, above) is granted. Prior to such production, however, Shadow is directed to provide Defendants with an estimate of the costs of production (including vendor and attorneys' fees), and counsel are then directed to confer in good faith regarding an appropriate contribution by Defendants to those costs – or, if the costs are prohibitively high, to confer regarding reasonable limitations on the document requests that

would assist in containing costs. If counsel are unable to agree on the scope of the requests, or on a reasonable cost allocation, then, no later than two weeks from the date of this Order, counsel for Defendants and for Shadow may each make a supplemental submission to this Court, with attention to the specifics of the requests at issue, and this Court will make any necessary rulings.

    5.    Absent a stipulation between counsel for Defendants and Shadow, Shadow's document production pursuant to the Subpoena shall be completed within 30 days of either (a) this Order, or (b) any further order issued by this Court regarding the scope of production (if necessary under paragraph 3, above), whichever date is later.

    6.    Defendants' motion to compel the appearance for deposition of a corporate representative of Shadow is granted. The deposition shall be held on a date to be agreed by counsel, but, unless stipulated otherwise, no later than two weeks from the date that Shadow completes its production of documents.

    7.    Defendants are directed to provide a copy of this Order, forthwith, to counsel for Shadow.

* * *

To the extent anything in this Order impacts on any discovery deadlines previously set in this case, the parties are directed to confer in good faith and to submit a joint proposal seeking an appropriate modification of those deadlines.

In light of the above rulings, the Clerk of Court is directed to close the following open motions shown on the Docket: Dkts. 99, 129, 130, 134, 137, 138, and 141.

Dated: New York, New York
June 2, 2017

SO ORDERED

_/s/ Debra Freeman_
DEBRA FREEMAN
United States Magistrate Judge

Copies to:

All counsel (via ECF)