Mark J. Rosenberg
Amy B. Goldsmith
Joel H. Rosner
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, New York 10018
Telephone:  212-216-8000
Facsimile:  212-216-8001
mrosenberg@tarterkrinsky.com
agoldsmith@tarterkrinsky.com
jrosner@tarterkrinsky.com

*Attorneys for Plaintiff Lokai Holdings LLC*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

LOKAI HOLDINGS LLC,

                    Plaintiff,

      v.

TWIN TIGER USA LLC, TWIN TIGER
WORLD MARKETS LTD., RORY
COPPOCK and TROY COPPOCK,

                    Defendants.

Case No. 15-CV-9363 (ALC)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTIONS TO DISMISS DEFENDANT TWIN TIGER USA LLC'S 1ST,
3RD, 4TH, 5TH, 6TH, 7TH, 8TH, AND 9TH COUNTERCLAIMS AND
TO STRIKE DEFENDANTS' 2ND AFFIRMATIVE DEFENSE**

# Table of Contents

**Page**

Table of Authorities ..................................................................................................... ii

Preliminary Statement ................................................................................................. 1

Facts Pertinent to This Motion .................................................................................... 2

Argument .................................................................................................................... 2

POINT I    TTUSA's Unfair Competition and False Advertising  Claims Should
Be Dismissed .............................................................................................................. 3

   A.  TTUSA is Required to Plead Its Claims With Particularity ............................... 4

   B.  TTUSA Has Not Pleaded Its False Advertising and Unfair  Competition
      Claims With Particularity or Plausibility ........................................................ 6

    1.  The Elements of a Lanham Act False Advertising Claim ............................... 6

    2.  TTUSA Has Failed to Adequately Plead Its Lanham Act Claim .................... 8

      a.  The "Water Statement Claim" Is Not False .............................................. 9

      b.  The "Failure to Disclose Advertising Claim" Is Not Actionable .............. 13

    3.  TTUSA's Claimed Injury is Implausible ..................................................... 14

   C.  TTUSA's California Unfair Competition and False Advertising
      Claims Also Fail ........................................................................................... 16

   D.  TTUSA Cannot Bring a Claim Under New York General Business
      Law § 349 ..................................................................................................... 18

   E.  TTUSA's Unclean Hands Will Bar Its Claims ................................................ 19

POINT II   Defendants' Unclean Hands Affirmative Defense Should Be Stricken .................... 20

POINT III  TTUSA's Tortious Interference Claims Should Be Dismissed ............................... 22

POINT IV  TTUSA's 35 U.S.C. § 285 Claim Should Be Dismissed ......................................... 23

Conclusion ................................................................................................................. 24

# Table of Authorities

**Pages**

*Adler v. Fed. Republic of Nigeria,*
219 F.3d 869 (9th Cir. 2000) ..............................................................................19

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.,*
404 F.3d 566 ..................................................................................................... 21f

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937 (2009) .....................................................2, 3, 9, 15

*Barrett v. Milwaukee Electric Tool, Inc.,*
No. 14cv1804 ......................................................................................................11

*Callaway Golf Co. v. Screen Actors Guild, Inc.,*
No. 07CV0373-LAB, 2009 WL 5125603 (S.D. Cal. Dec. 18, 2009) .....................14

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
973 P.2d 527 (Cal. 1999) ....................................................................................14

*Clark Consulting, Inc. v. Fin. Sols. Partners, LLC,*
2005 WL 3097892 (S.D.N.Y. Nov. 17, 2005) .......................................................11

*Cohen v. JP Morgan Chase & Co.,*
498 F.3d 111 (2d Cir. 2007)................................................................................18

*Colonial Funding Network v. Epazz, Inc.,*
--- F.Supp.3d ----, 2017 WL 1944125 (S.D.N.Y. 2017) .......................................20

*Davis v. HSBC Bank Nevada, NA,*
691 F.3d 1152 (9th Cir. 2012) ............................................................................16

*Ebner v. Fresh, Inc.,*
838 F.3d 958 (9th Cir. 2016) ..............................................................................17

*Emco, Inc. v. Obst,*
No. CV03–6432–R (RZX), 2004 WL 1737355 (C.D. Cal. Jul. 29, 2004) ..............19

*Fink v. Time Warner Cable,*
714 F.3d 739 (2d Cir. 2013)........................................................................... passim

*In re GlenFed, Inc. Sec. Litig.,*
42 F.3d 1541 (9th Cir. 1994) ................................................................................4

*Goel v. Bunge, Ltd.,*
820 F.3d 554 (2d Cir. 2016.)...............................................................................11

*Goshen v. Mut. Life Ins. Co.*,
  98 N.Y.2d 314, 774 N.E.2d 1190 (2002) ...........................................................................18

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
  277 F. Supp. 2d 269 (S.D.N.Y. 2003) ..........................................................................18, 19

*Haagen–Dazs v. Frusen Gladje*,
  493 F. Supp. 73 (S.D.N.Y. 1980) ...................................................................................19

*Holloway v. Bristol-Myers Corp.*,
  485 F.2d 986 (D.C. Cir. 1973) ........................................................................................14

*InteraXon Inc. v. NeuroTek, LLC*,
  No. 15-cv-05290-KAW, 2017 WL 24721 (N.D. Cal. Jan. 3, 2017) .......................................23

*Janney v. General Mills*,
  944 F. Supp. 2d 806 (N.D. Cal. 2013) ..............................................................................5

*Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.*,
  960 F.2d 294 (2d Cir. 1992)..........................................................................................8, 10

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .......................................................................................4, 5

*Koch v. Acker, Merrall & Condit Co.*,
  18 N.Y.3d 940, 967 N.E.2d 675 (2012)...............................................................................18

*McNeilab, Inc. v. Am. Home Prods. Corp.*,
  501 F. Supp. 517 (S.D.N.Y. 1980) ...............................................................................11, 13

*Medisim Ltd. v. BestMed LLC*,
  910 F. Supp. 2d 591 (S.D.N.Y. 2012)................................................................................13

*Merck Eprova AG v. Gnosis S.p.A.*,
  901 F. Supp. 2d 436 (S.D.N.Y. 2012), *aff'd* 760 F.3d 247 (2d Cir. 2014) ..............................6

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
  861 F. Supp. 2d 344 (S.D.N.Y. 2012)................................................................................22

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
  No. 08-CV-5023 (CBA)(RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010)...................23

*O'Donnell v. Bank of America, Nat'l Ass'n*,
  504 Fed. App'x 566 (9th Cir. 2013) .................................................................................14

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. ___, 134 S. Ct. 1749 (2014)................................................................................23

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) ...................................................................4

*Ortho Pharm. Corp. v. Cosprophar, Inc.*,
    32 F.3d 690 (2d Cir. 1994) ........................................................................6

*Porras v. StubHub, Inc.*,
    No. C 12-1225 MMC, 2012 WL 3835073 (N.D. Cal. Sept. 4, 2012) ....................12

*Radiancy, Inc. v. Viatek Consumer Prods. Grp., Inc.*,
    138 F. Supp. 3d 303 (S.D.N.Y. 2014) ........................................................22

*In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) ........................................................16

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*,
    646 F. Supp. 2d 510 (S.D.N.Y. 2009) ..............................................19, 21

*Stuart v. Cadbury Adams USA, LLC*,
    458 Fed. App'x 689 (9th Cir. 2011) ..........................................................17

*Szymczak v. Nissan N. Am., Inc.*,
    No. 10–CV–7493, 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) .........................18

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
    497 F.3d 144 (2d Cir. 2007) ................................................7, 8, 10, 12

*Volunteer Firemen's Ins. Services, Inc. v. McNeil and Co., Inc.*,
    221 F.R.D. 388 (W.D.N.Y. 2004) ..............................................................4, 5

*White v. Samsung Elecs. Am., Inc.*,
    971 F.2d 1395 (9th Cir. 1992) ..................................................................13

*Williams v. Gerber Prods. Co.*,
    552 F. 3d 934 (9th Cir. 2008) ..................................................................16

*Williamson v. Apple, Inc.*,
    No. 5:11–cv–00377 EJD, 2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) .................10

**Statutes**

35 U.S.C. § 285 ........................................................................................23, 24

Cal. Bus. & Prof. Code §§ 17200 et seq. ..............................................................4

Cal. Bus. & Prof. Code §§ 17500 et seq. ..............................................................4

Federal Trade Commission Act .......................................................................14

N.Y. General Bus. Law § 349 ........................................................................................4-5, 18-19

Lanham Act, 15 U.S.C. § 1125(a) ................................................................................. 4, 6-7, 13

**Other Authorities**

Carl Sagan, *Cosmos: A Personal Voyage: Encyclopaedia Galactica* (PBS television broadcast, December 14, 1980)............................................................................................................16

Fed. R. Civ. P. 9...........................................................................................................................4, 5

Fed. R. Civ. P. 12......................................................................................................................2, 20

Fed. R. Civ. P. 54.........................................................................................................................24

## **Preliminary Statement**

Plaintiff Lokai Holdings LLC ("Lokai") brings this motion to dismiss Defendant Twin Tiger USA LLC's ("TTUSA") inadequately pleaded counterclaims alleging that Lokai has engaged in false advertising and unfair competition and has tortuously interfered with TTUSA's contractual and business relationships. This motion also seeks to strike Defendants' Second Affirmative Defense of Unclean Hands, which is based on conduct that is not related to Lokai's claims.

TTUSA's false advertising and unfair competition claims are based on two propositions, neither of which is true. First, TTUSA claims that consumers will be misled by a statement on Lokai's website that it infuses water into its bracelets because consumers will believe that the water will remain permanently in the bracelets, when in reality the water eventually evaporates. However, this claim is completely wrong because, among other things, Lokai itself discloses on its website the fact that the water in the bracelets evaporate over time. As such, no reasonable consumer could hold the claimed belief. Second, TTUSA claims that consumers will be misled by Lokai's "concealment" of the fact that it hires celebrities to advertise its products. But TTUSA does not allege any fact supporting this claim, nor does it offer any explanation of how consumers could be misled by *what is standard practice in the advertising industry*. Furthermore, in light of the fact that TTUSA entered the marketplace years after Lokai, TTUSA's thinly-pleaded damages claims are highly implausible. And, although beyond the scope of the present motion, TTUSA's claims are also defective because it has engaged, and continues to engage, in the very same conduct that is the subject of its claims against Lokai.

TTUSA's tortious interference claims are also inadequately pleaded, as they are missing the critical facts required to sustain those claims, *i.e.*, the details of the contractual and business relationships and how Lokai's conduct allegedly disrupted those relationships.

Accordingly, Lokai's motions to dismiss and to strike should be granted.

## Facts Pertinent to This Motion

The few facts pertinent to this motion are drawn from Defendants' Answer, Affirmative Defenses, and Counterclaims, which was filed on June 7, 2017 (Dkt. # 159) (the "Answer," "Affirmative Defenses," and "Counterclaims," as applicable).

## Argument

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). A sufficiently pleaded complaint must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A complaint that merely offers labels and conclusions, a formulaic recitation of the elements, or "'naked assertion[s]' devoid of 'further factual enhancement,'" will not survive a motion to dismiss. *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966). At the motion-to-dismiss stage, this Court accepts all factual allegations in the Counterclaims (and Second Affirmative Defense) as true and draws all reasonable inferences in favor of Defendants, the non-movants. *Id.* But the Court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*, 556 U.S. at 678, 129 S. Ct. at 1949. Nor is the Court "'bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.*, 556 U.S. at 678, 129 S. Ct. at 1950 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965).

A claim is facially plausible when the facts pleaded "allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 556 U.S. at 678, 129 S. Ct. at 1949. That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim that pleads only "facts that are 'merely consistent with' a defendant's liability" falls short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966). This review requires "context-specific" analysis involving the Court's "judicial experience and common sense." *Id.*, 556 U.S. at 679, 129 S. Ct. at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011)).

<u>**POINT I**</u>        <u>**TTUSA's Unfair Competition and False Advertising Claims Should Be Dismissed**</u>

TTUSA has raised four separate counterclaims against Lokai for false advertising and unfair competition (3rd, 4th, 5th, and 6th Counterclaims), but all four claims rely on the same alleged conduct: (i) Lokai has failed to disclose that the water inserted in its bracelets evaporates over time; and (ii) Lokai has failed to disclose that it compensates certain persons in exchange for their efforts to promote Lokai and its products. For a host of reasons, including TTUSA's simple failure to plead the claims adequately, all four counterclaims should be dismissed.

## A.    TTUSA is Required to Plead Its Claims With Particularity

TTUSA has asserted four counterclaims for relief against Lokai for false advertising and unfair competition: (1) false advertising under the Lanham Act, 15 U.S.C. § 1125(a); (2) unfair competition under California law, Cal. Bus. & Prof. Code §§ 17200 et seq. (the "UCL"); (3) false advertising under California law, Cal. Bus. & Prof. Code §§ 17500 et seq. (the "FAL"); and (4) unfair and deceptive business practices under New York law, N.Y. General Bus. Law § 349. However, TTUSA has failed to plead these claims with the particularity required by Federal Rule of Civil Procedure 9(b).

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Therefore, "the pleader must state the time, place, and specific content of the false misrepresentations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (citation omitted). Furthermore, the plaintiff must "set forth an explanation as to why the statement or omission complained of was false and misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds*.

Rule 9(b) applies to all of TTUSA's false advertising and unfair competition claims because each sounds in fraud. *See, e.g., Volunteer Firemen's Ins. Services, Inc. v. McNeil and Co., Inc.*, 221 F.R.D. 388, 393 (W.D.N.Y. 2004) (Lanham Act false advertising claim and New York General Business Law § 349 claim based on false or misleading statements made in order to deceive or mislead consumers sound in fraud and must be pleaded with particularity under Rule 9(b)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-27 (9th Cir. 2009) (claims under California consumer protection statutes, whether based on false statements or on nondisclosure of material facts, are grounded in fraud and must be pleaded with particularity under Rule 9(b)).

Each of TTUSA's claims sounds in fraud because each alleges that Lokai has falsely represented to consumers that its bracelets contain water from Mt. Everest and that Lokai has deceived consumers by not disclosing that it provided free products to certain persons who later endorsed Lokai's product and by not disclosing payments to other persons who endorsed or promoted Lokai's product, including on social media. Counterclaims, ¶¶ 18-72. "When claims under the . . . UCL, and FAL are based on a manufacturer's alleged misrepresentations about a product's characteristics, those claims sound in fraud and Rule 9(b) applies." *Janney v. General Mills*, 944 F. Supp. 2d 806, 817 (N.D. Cal. 2013). In *Janney*, the court held that the plaintiffs' claim sounded in fraud where it alleged that General Mills falsely represented that its products were "All Natural," in order to deceive customers despite its knowledge that the products contained processed sweeteners. *Id.* Similarly, in *Volunteer Firemen Servs.*, the court held that Lanham Act and General Business Law § 349 false advertising and unfair competition claims asserting that the defendant had made false and misleading statements sounded in fraud. 221 F.R.D. at 389-90, 393. Here, TTUSA accuses Lokai of the same type of conduct: intentionally making a false statement, despite its knowledge to the contrary, that its bracelet contains water, in order to deceive retailers and consumers. Counterclaims, ¶¶ 20-23. Such an allegation plainly is subject to Rule 9(b), as it is an accusation of fraudulent misrepresentation concerning the characteristics of Lokai's product.

Similarly, California claims for false advertising and unfair competition sound in fraud where they are based on the allegation that material information was not disclosed. *Kearns*, 567 F.3d at 1126-27. In *Kearns*, the court found that a claim asserting that the defendant had failed to disclose "information pertinent to consumers" was equivalent to a claim for fraud or misrepresentation under California law and so had to be pleaded with particularity. *Id.* Thus,

TTUSA's claim that Lokai failed to disclose material information to retailers and consumers, namely, that it compensates persons in exchange for their promotional efforts, is grounded in fraud and must be pleaded with particularity.

**B.    TTUSA Has Not Pleaded Its False Advertising and Unfair
Competition Claims With Particularity or Plausibility**

1.   The Elements of a Lanham Act False Advertising Claim

To properly make out a claim for false advertising under the Lanham Act, a party:

> must allege plausible facts tending to show the following elements:
> (1) the [opposing party] has made a false or misleading statement
> of fact; (2) the false or misleading statement has actually deceived
> or has the capacity to deceive a substantial portion of the intended
> audience; (3) the deception is material in that it is likely to
> influence purchasing decisions; (4) the [opposing party] placed the
> false or misleading statement in interstate commerce; and (5) the
> [party] has been injured as a result of the misrepresentation, either
> by direct diversion of sales or by a lessening of goodwill
> associated with its products.

*Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 449-50 (S.D.N.Y. 2012), *aff'd* 760 F.3d 247 (2d Cir. 2014).

To have standing to pursue a false advertising claim under the Lanham Act, a party must demonstrate "a reasonable interest to be protected against the advertiser's false or misleading claims, and a reasonable basis for believing that this interest is likely to be damaged by the false or misleading advertising." *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 694 (2d Cir. 1994) (internal citation and quotation marks omitted). "The 'reasonable basis' prong embodies a requirement that the plaintiff show both likely injury and a causal nexus to the false advertising." *Id.* "'[T]he likelihood of injury and causation will not be presumed, but must be demonstrated in some manner.'" *Id.* (quoting *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 316 (2d Cir. 1982), *abrogated on other grounds* by Fed. R. Civ. P. 52(a)).

To prove the first element of a Lanham Act false advertising claim, a plaintiff must show one of two different theories of recovery: the challenged advertisement may be literally false or likely to mislead or confuse consumers ("impliedly false"). "First, the plaintiff can demonstrate that the challenged advertisement is literally false, *i.e.,* false on its face." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007). "When an advertisement is shown to be literally or facially false, consumer deception is presumed, and 'the court may grant relief without reference to the advertisement's [actual] impact on the buying public.'" *Id.* (quoting *Coca–Cola Co.,* 690 F.2d at 317). "This is because plaintiffs alleging a literal falsehood are claiming that a statement, on its face, conflicts with reality, a claim that is best supported by comparing the statement itself with the reality it purports to describe." *Id.* (quoting *Schering Corp. v. Pfizer Inc.,* 189 F.3d 218, 229 (2d Cir. 1999)). However, "'only an unambiguous message can be literally false.'" *Id.*, at 158 (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Pharm. Co.*, 290 F.3d 578, 587 (3d Cir. 2002)). "Therefore, if the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Id.*

"Alternatively, a plaintiff can show that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Id.*, at 153. "'[P]laintiffs alleging an implied falsehood are claiming that a statement, whatever its literal truth, has left an impression on the listener [or viewer] that conflicts with reality"—a claim that "invites a comparison of the impression, rather than the statement, with the truth." *Id.* (quoting *Schering Corp.,* 189 F.3d at 229). However, while "'plaintiffs seeking to establish a literal falsehood must generally show the substance of what is conveyed . . . a district court *must* rely on extrinsic evidence [of consumer deception or confusion] to support a finding of an implicitly false message.'" *Id.*

(quoting *Schering Corp.,* 189 F.3d at 229). For a "misleading, non-comparative commercial[ ] which tout[s] the benefits of the product advertised but ma[kes] no direct reference to any competitor's product," the injury "accrues equally to all competitors; none is more likely to suffer from the offending broadcasts than any other" . . . Thus, 'some indication of actual injury and causation' is necessary 'to satisfy Lanham Act standing requirements and to ensure [the] plaintiff's injury [is] not speculative.'" *Id.,* at 162 (quoting *McNeilab, Inc. v. American Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988)).

For an "implied falsehood" to be actionable, the claimant must establish "that a statistically significant part of the commercial audience holds the false belief allegedly communicated by the challenged advertisement." *Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir. 1992). "Absent such a threshold showing, an implied falsehood claim must fail. This follows from the obvious fact that the injuries redressed in false advertising cases are the result of public deception." *Id.* If the claimant cannot demonstrate an implied falsehood, then it "cannot establish that it suffered any injury as a result of the advertisement's message. Without injury there can be no claim, regardless of commercial context, prior advertising history, or audience sophistication." *Id.*

Under either theory, the plaintiff must also demonstrate that the false or misleading representation involved an inherent or material quality of the product. *Time Warner Cable*, 497 F.3d at 153 n.3.

## 2. TTUSA Has Failed to Adequately Plead Its Lanham Act Claim

TTUSA has failed to plead facts adequately or plausibly demonstrating *any* of the elements of a Lanham Act false advertising claim. That is, TTUSA has failed to plead facts showing that Lokai made a false or misleading statement of fact, that its statements actually

deceived or have the capacity to deceive a substantial portion of the intended audience, that the alleged deception influenced purchasing decisions, that Lokai placed the false or misleading statement in interstate commerce, or that TTUSA has been injured as a result of Lokai's supposed misrepresentation. Instead, TTUSA offers only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which the Court can—and should—disregard. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. *See* Counterclaims, ¶¶ 18-38.

TTUSA's Lanham Act counterclaim is in two parts. First, TTUSA asserts that the following statement on Lokai's website is literally false and/or misleading: "Each Lokai is infused with elements from the highest and lowest points on Earth. The white bead carries water from Mt. Everest, and the black bead contains mud from the Dead Sea. These extreme elements are a reminder to the wearer to live a balanced life – staying humble during life's highs and hopeful during its lows" (the "Water Statement Claim") Counterclaims, ¶¶ 20-23. Second, TTUSA claims that Lokai has concealed that it has made payments of money and giveaways of free bracelets to celebrities in exchange for their "wear[ing] Lokai product and/or post[ing] about Lokai on social media" (the "Failure to Disclose Advertising Claim"). Counterclaims, ¶¶ 29-31.

a. The "Water Statement Claim" Is Not False

TTUSA argues that the Water Statement Claim is "literally false and/or misleading" because it is likely to deceive retailers and consumers into believing that "the Lokai bracelet contains water from Mount Everest at the time of purchase, and that it is capable of containing water permanently." Counterclaims, ¶¶ 21, 23-25. As an initial matter, nothing in the Water Statement Claim asserts that the bracelets will contain the water "permanently." Furthermore, TTUSA does not allege that Lokai does not "infuse" water into its bracelet. To the contrary, TTUSA's allegations in their counterclaims—that Lokai has failed to disclose the evaporation of

the water in its bracelets—presuppose that water, in fact, is inserted into Lokai's bracelet. Accordingly, the Water Statement Claim is not "literally false, *i.e.,* false on its face . . . a statement, on its face, [that] conflicts with reality." *Time Warner Cable*, 497 F.3d at 153. (By contrast, the court in *Time Warner Cable* found a television commercial to make a literally false claim that the picture quality of DIRECTV HD was superior to cable, where the commercial explicitly said that it was impossible to obtain the best picture quality from any source other than DIRECTV. *Id*, 497 F.3d at 154.)

TTUSA also fails to allege facts demonstrating that the Water Statement Claim is misleading. TTUSA has not pleaded "that a statistically significant part of the commercial audience holds the false belief allegedly communicated by the challenged advertisement." *Johnson & Johnson*, 960 F.2d at 298 (2d Cir. 1992). Indeed, TTUSA has not pleaded facts showing that any consumers or retailers hold the false belief it claims, or that the belief is likely to influence their purchasing decisions. TTUSA's sole showing is a conclusory statement that retailers and consumers have purchased "Lokai bracelet[s] based on their belief that the Lokai bracelet contained and is capable of permanently containing water from Mount Everest." Moreover, it would be unreasonable for any consumer or retailer to form a belief, based on the Water Statement Claim, that the bracelets will "permanently contain[] water." *See Williamson v. Apple, Inc.*, No. 5:11–cv–00377 EJD, 2012 WL 3835104, at *5-6 (N.D. Cal. Sept. 4, 2012) (rejecting false advertising claim based on assertion that product sustained damage and/or wear and tear, where the challenged advertisement made no claim of durability). It is elementary school science that water evaporates, and nothing in the Water Statement Claim suggests that Lokai's bracelets are immune from the laws of nature. It would also be unreasonable for a consumer or retailer to form a belief that the water will stay permanently in the bracelet because

Lokai discloses on its website that the water in its bracelet evaporates over time: "Injected with water sourced by sherpas from the heights of Mt. Everest, the white bead represents life's highest moments . . . *The water may evaporate over time*." https://support.mylokai.com/hc/en-us/articles/231734467-What-s-inside-the-black-and-white-beads-[1] (emphasis added).

Although TTUSA does not appear to be basing its Lanham Act claim concerning the Water Statement Claim on a failure to disclose, such, in any case, would not avail it, as the Lanham Act does not impose an affirmative duty of disclosure. *See Clark Consulting, Inc. v. Fin. Sols. Partners, LLC*, 2005 WL 3097892, at *3 (S.D.N.Y. Nov. 17, 2005) ("The [Lanham] Act imposes no affirmative duty of disclosure . . . and a claim cannot be based on the failure to disclose a fact."); *McNeilab, Inc. v. Am. Home Prods. Corp.*, 501 F. Supp. 517, 532 (S.D.N.Y. 1980) ("[A] failure to inform consumers of something, even something that they should know, is not per se a misrepresentation actionable under section 43(a) of the Lanham Act.")

In any event, Lokai has disclosed the evaporation. Although TTUSA attempts to conceal that fact by not citing to that disclosure and instead couching it as an admission of fact (Counterclaims, ¶ 22), Lokai's disclaimer negates any assertion that the Water Statement Claim is misleading. *See, e.g.*, *Barrett v. Milwaukee Electric Tool, Inc.*, No. 14cv1804 JAH(DHB), 2016 WL 4595947, at *3-5 (S.D. Cal. Jan. 26, 2016) (rejecting false advertising claim asserting that product is not "handmade" as claimed, where website notifies consumers of exactly how the

---

[1] The Court may consider this disclaimer because TTUSA expressly incorporates it (and Lokai's website) by reference in the Counterclaims. *See* Counterclaims, ¶ 22. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016.) Even if the disclaimer on Lokai's website were not expressly incorporated by reference, the Court would be permitted to consider the disclaimer as a document "integral" to the counterclaims. *Id*. "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Id*. (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted). Where, as here, TTUSA's claim is vitiated by Lokai's website, if it, including the disclaimer, are "read in their entirety," the Court may consider the disclaimer on the motion to dismiss notwithstanding TTUSA's failure to attach it to the counterclaims. *Id*.

product is made); *Porras v. StubHub, Inc.*, No. C 12-1225 MMC, 2012 WL 3835073, at *6 (N.D. Cal. Sept. 4, 2012) (disclaimer on website that tickets may be invalid precludes claim for false advertising on the basis that tickets sold by website were invalid). TTUSA's failure to cite to the disclosure on Lokai's website regarding evaporation dooms its claims, given that it has omitted a material disclaimer to Lokai's advertisement that refutes TTUSA's claim. In light of Lokai's disclosure, TTUSA's claim simply is not plausible. "A plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the language of the advertisement in his pleadings and expect his action to survive a motion to dismiss or, indeed, to escape admonishment. Here, the allegations of the [Counterclaims] are materially inconsistent with the sole advertisement . . . submitted. We therefore easily conclude that [the] claims lack the facial plausibility necessary to survive a motion to dismiss." *Fink*, 714 F.3d at 742. Similarly,

TTUSA also fails to adequately allege that it has been injured as a result of Lokai's supposed misrepresentation, which describes Lokai's own product but makes no reference to TTUSA's product. As with its claim that retailers and consumers will be misled by the Water Statement Claim, TTUSA's showing of injury consists of conclusory statements that retailers and consumers have purchased Lokai's bracelets instead of TTUSA's bracelets because of the Water Statement Claim, and that TTUSA has suffered reputational injury. (Counterclaims, ¶¶ 30-31.) Therefore, TTUSA has not shown the required "actual injury and causation," which is not "speculative," caused by the allegedly "misleading, non-comparative [advertisement] which tout[s] the benefits of the product advertised but ma[kes] no direct reference to any competitor's product." *Time Warner Cable*, 497 F.3d at 162.

TTUSA cannot rely on its claim of reputational injury because it has not alleged any facts demonstrating that it has any reputation in the marketplace, much less one that has been injured. *Medisim Ltd. v. BestMed LLC*, 910 F. Supp. 2d 591, 617 (S.D.N.Y. 2012) (rejecting assertion of reputational injury in Lanham Act false advertising claim because the plaintiff has not demonstrated it has any reputation in the marketplace, let alone a reputation that could be injured as claimed).

Lastly, TTUSA has not even alleged that Lokai has Lokai placed the false or misleading statement in interstate commerce.

Accordingly, TTUSA's Lanham Act false advertising claim, in regard to the Water Statement Claim, must be dismissed.

### b. The "Failure to Disclose Advertising Claim" Is Not Actionable

As stated above, there is no affirmative obligation to disclose facts under the Lanham Act, even a fact that consumers "should know." *McNeilab, Inc.*, 501 F. Supp. at 532. Moreover, TTUSA's Failure to Disclose Advertising Claim essentially seeks to make a legal claim out of the well-known practice that companies hire celebrities to advertise products. It is doubtful that even a single hour of television passes without a commercial featuring a celebrity endorsing some product. Indeed, the practice is so common that in the last few years the car company Lincoln Motors has run commercials in which the actor Matthew McConaughey touts the product by stating that, "I've been driving a Lincoln since long before anybody paid me to drive one."[2] *See also White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1401 (9th Cir. 1992) (stating, about an ad in which the talk show host Morton Downey Jr. appeared as a presidential candidate, "[c]onsumers . . . would likely believe, and would be correct in so believing, that Mr. Downey

---

[2]  *See, e.g.,*  http://abcnews.go.com/Business/matthew-mcconaugheys-lincoln-commercials-generate-lots-buzz/story?id=26316853.

was paid for his permission and was endorsing Samsung products."); *Callaway Golf Co. v. Screen Actors Guild, Inc.*, No. 07CV0373-LAB (WMc), 2009 WL 5125603, at *1-2 (S.D. Cal. Dec. 18, 2009) (discussing the qualifications of an expert to testify regarding celebrity endorsement agreements, including about actors, musicians, and athletes, and noting that the expert worked in the field of celebrity endorsements and advertising for over 30 years"). It therefore is highly implausible that any consumer could be misled or deceived by a celebrity's advertising efforts, and TTUSA does not plead any facts demonstrating that unlikely proposition.

The only basis for a disclosure obligation to which TTUSA can point are guidelines promulgated by the Federal Trade Commission pursuant to the Federal Trade Commission Act concerning celebrity endorsements. But it is well-settled that the Federal Trade Commission Act does not create a private right of action. *See*, *e.g.*, *O'Donnell v. Bank of America, Nat'l Ass'n*, 504 Fed. App'x 566, 568 (9th Cir. 2013) (rejecting unfair competition claim premised on the defendant's alleged violation of the Federal Trade Commission Act); *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 988-89 (D.C. Cir. 1973) ("The [Federal Trade Commission] Act nowhere purports to confer upon private individuals, either consumers or business competitors, a right of action to enjoin the practices prohibited by the Act or to obtain damages following the commission of such acts"); *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 543 (Cal. 1999) ("private citizens have no right to seek personal enforcement of section 5 in lieu of FTC action"). Furthermore, as discussed below, TTUSA has unclean hands because it is engaged in the same conduct that it is accusing Lokai of in the counterclaims.

3. <u>TTUSA's Claimed Injury is Implausible</u>

TTUSA also fails to plausibly assert that it has been harmed by Lokai's supposedly false and misleading statements. There is no dispute that TTUSA entered the market almost two years

after Lokai's website began commercial sales in June 2013. Answer, ¶ 22. There is also no dispute that the statements that TTUSA complains of in its counterclaims began long before TTUSA began selling its competing products. *E.g.*, Counterclaims, ¶ 29. Indeed, in light of the foregoing, it is likely to be impossible for Defendants to show that any sales were diverted, because the same advertisements have been running before and since Defendants started selling their products. Nor is there any dispute that Lokai was so well-known that Defendants knew of Lokai before they began selling their own products. Answer, ¶ 25. There is also no dispute that Lokai's products cost between two and three times the price of TTUSA's products. On the other hand, TTUSA does not allege any facts showing that it has any significant reputation in the marketplace, or that it has engaged in any meaningful advertising of its own products, much less that such efforts were comparable to Lokai's advertising efforts. Yet, according to TTUSA, the reason consumers and retailers purchase Lokai's more expensive products is not the greater brand exposure and reputation that Lokai and its products have, but rather because they have been misled and deceived by Lokai's statements about the water in its bracelets and Lokai's concealment of the fact that it pays people to advertise its products. But for those things, TTUSA argues, consumers would flock to its products, which have no significant advertising or reputation. Such a claim simply is not plausible, as it alleges no more than the "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

A key issue in determining plausibility is whether there are "alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Fink*, 714 F.3d at 741 (2d Cir. 2013). TTUSA's false advertising and unfair competition claims are akin to a generic acetaminophen manufacturer asserting that Tylenol has diverted sales from it. While that set of facts is possible, it is highly implausible, as the obvious explanation is that Tylenol has greater

brand exposure and market presence, and has been available for a longer period of time. In order to sustain such a claim, the generic manufacturer would rightly be obliged to set forth specific facts demonstrating the unlikely turn of events. Simply put, extraordinary claims require extraordinary evidence.[3] TTUSA utterly fails to meet this requirement.

Here, there is an obvious alternative explanation for Lokai's success as against TTUSA: consumers purchase Lokai's more expensive product because Lokai has developed a product with a strong reputation and brand exposure while TTUSA has not. TTUSA's failure to plead a plausible set of facts supporting its claims dooms them and requires dismissal.

C.     **TTUSA's California Unfair Competition and False Advertising Claims Also Fail**

The defects in TTUSA's Lanham Act false advertising claim also doom its UCL and FAL claims as all three claims require that there be a likelihood of deceiving a significant number of reasonable consumers. *Williams v. Gerber Prods. Co.*, 552 F. 3d 934, 938 (9th Cir. 2008) (claims under the UCL and FAL are governed by the "reasonable consumer" standard). "Under the reasonable consumer standard, Appellants must 'show that members of the public are likely to be deceived.'" *Id.*, (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). "A reasonable consumer is 'the ordinary consumer acting reasonably under the circumstances.'" *Davis v. HSBC Bank Nevada, NA*, 691 F.3d 1152, 1162 (9th Cir. 2012) (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 682 (App. Ct. 2006)). "[B]y explicitly imposing a 'reasonable care' standard on advertisers, [the FAL] implicitly adopts such a standard for consumers as well-unless particularly gullible consumers are targeted, a reasonable person may expect others to behave reasonably as well." *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 968 (S.D. Cal. 2012).

---

[3] Carl Sagan, *Cosmos: A Personal Voyage: Encyclopaedia Galactica* (PBS television broadcast, December 14, 1980).

A showing that a challenged advertisement is likely to deceive "requires more than a mere possibility that [the advertisement] 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.' . . . Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486, 495 (App. Ct. 2003)). The advertisement is "not false and deceptive merely because . . . it may be "'unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons'" . . . that may purchase the product. *Id.*, at 966 (quoting *Davis*, 691 F.3d at 1162). In *Ebner*, the court found that a product label advertising the amount of lip product in a tube could not be misleading to a rational consumer where the consumer could see whether there was product left in the tube. *Id.*, at 965-66. Similarly, here, where Lokai discloses the evaporation of water from its bracelets, a rational consumer could not be misled into thinking that the water does not evaporate. And, in the absence of any affirmative statement by Lokai from "from which any inference could be drawn or on which any reasonable belief could be based" that it does not pay for celebrity advertising, "it is not plausible that 'a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Lavie*, 129 Cal.Rptr.2d at 495).

Accordingly, TTUSA's UCL and FAL claims should be dismissed. *Stuart v. Cadbury Adams USA, LLC*, 458 Fed. App'x 689, 690-91 (9th Cir. 2011) (affirming dismissal of UCL and FAL claims dismissed because they "defy common sense" and only an "unreasonable consumer would be confused or deceived by" the party's failure to disclose a well-known fact).

**D.**     **TTUSA Cannot Bring a Claim Under New York General Business Law § 349**

TTUSA's counterclaim under General Business Law § 349 should be dismissed for the same reasons as TTUSA's unfair competition and false advertising claims under the Lanham Act and California law. *See Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (section 349 is violated only where the alleged act is likely to mislead a reasonable consumer acting reasonably); *Fink*, 714 F.3d at 742 (no section 349 claim lies when the allegedly deceptive practice was fully disclosed).

Furthermore, the § 349 claim should be dismissed because TTUSA has no standing to bring its claim under that statute. As an initial matter, section 349 applies only to transactions occurring in New York State. *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324–25, 774 N.E.2d 1190 (2002) ("to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York."); *see also Szymczak v. Nissan N. Am., Inc.*, No. 10–CV–7493, 2011 WL 7095432, at *12 (S.D.N.Y. Dec. 16, 2011) (holding that § 349 "do[es] not apply to transactions occurring outside the state."). TTUSA, however, pleads no injury from transactions that occurred in New York and it fails to identify any consumer that was deceived in New York.

Furthermore, to successfully assert a claim under § 349, a claimant "must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941, 967 N.E.2d 675 (2012) (internal quotation marks omitted). However, "[c]laims that arise out of a trademark infringement action, and disputes between competitors where the core of the claim is harm to another business as opposed to consumers, both constitute situations which courts have found to reflect a public harm that is too insubstantial to satisfy the pleading requirements of § 349." *Gucci Am., Inc. v. Duty Free*

*Apparel, Ltd.,* 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003). Based on the facts alleged in the counterclaims, "the gravamen of [TTUSA's] § 349 counterclaim is harm to [its] business in the form of: (1) lost profits . . . and (2) a general loss of good will from consumers . . . Where the gravamen of the complaint is harm to a business as opposed to the public at large, the business does not have a cognizable cause of action under § 349." *Id.*, at 274.

E.     **TTUSA's Unclean Hands Will Bar Its Claims**

"Unclean hands 'closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'" *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 877 (9th Cir. 2000) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). The unclean hands defense bars any false advertising or unfair competition claim where the claimant is engaged in the same misconduct of which it accuses the opposing party. *See, e.g.*, *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 533 (S.D.N.Y. 2009) (rejecting claims because the plaintiff had also marketed the advantages of the same ingredients it accused the defendant of falsely marketing); *Haagen–Dazs v. Frusen Gladje,* 493 F. Supp. 73, 75–76 (S.D.N.Y. 1980) (plaintiff's unclean hands in engaging in misconduct suggesting that it was Scandinavian in origin bars its claim that the defendant engaged in deceptive trade practices by suggesting its product was Swedish); *Emco, Inc. v. Obst*, No. CV03–6432–R (RZX), 2004 WL 1737355, at *4-5 (C.D. Cal. Jul. 29, 2004) (party's use of brand name and symbols falsely indicating that product was manufactured in the U.S. bars false advertising claim asserting that opposing party mislead consumers as to the geographic origin of its products.)

Although this matter is outside the record on a motion to dismiss, it is worth noting here that Defendants' false advertising and unfair competition claims also fail because Defendants

engage in the very same conduct they accuse Lokai of committing. Defendants also advertise their products as containing water, but admit that the water evaporates from their products over time, in the same way as water evaporates from Lokai's product. However, unlike Lokai, Defendants have not issued any disclaimer about that evaporation or otherwise disclosed it. Furthermore, Defendants advertise their products using endorsers that have been paid or been given product, and Defendants do not disclose the fact that the endorsers were paid or that they were given product. To the extent the Court does not dismiss TTUSA's false advertising and unfair competition claims for the reasons set forth above, Lokai respectfully submits that an immediate hearing be held to address TTUSA's unclean hands, which require dismissal of TTUSA's claims.

### <u>POINT II</u>     <u>Defendants' Unclean Hands Affirmative Defense Should Be Stricken</u>

Rule 12(f) of the Federal Rules of Civil Procedure provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "In order to strike a defense as 'insufficient,' not only must there be no questions of law or fact that might allow the defense to succeed, but the plaintiff must also show that it would be prejudiced by the inclusion of the defense." *Colonial Funding Network v. Epazz, Inc.*, --- F.Supp.3d ----, 2017 WL 1944125, at *9 (S.D.N.Y. 2017) (quoting *Tradewinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901 (JFK), 2013 WL 6669422, at *2 (S.D.N.Y. Dec. 17, 2013)). However, "[t]he burden of additional discovery and increasing the duration and expense of litigation can constitute sufficient prejudice." *Id*. (quoting *Tradewinds*, 2013 WL 6669422, at *2).

As a threshold matter, Defendants' Second Affirmative Defense of Unclean Hands, though asserted against the "Complaint" in its entirety, applies only to Lokai's equitable claim

for injunctive relief. Affirmative Defenses, ¶ 2; *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 607 (dismissing unclean hands defense where asserted against claims for damages). Moreover, as set forth above, the unclean hands defense applies only to false advertising or unfair competition claims where the claimant is engaged in the same misconduct of which it accuses the opposing party. *See*, *e.g.*, *Stokely-Van Camp,* 646 F. Supp. 2d at 533 (rejecting claims because the plaintiff had also marketed the advantages of the same ingredients it accused the defendant of falsely marketing). Here, none of the conduct at issue in the Seconds Affirmative Defense is at issue in Lokai's claims against Defendants.

Lokai asserts that Defendants have infringed on its trade dress by selling confusing similar products and that Defendants have engaged in unfair competition and false advertising by making false claims in their promotional efforts that their product contains "earth from below sea level" and "water from the mountains." (Complaint, Dkt. # 156.)

In contrast, Defendants' Second Affirmative Defense is based on totally different conduct: (i) that Lokai falsely claims the water infused into its bracelets remains there permanently; (ii) that Lokai has not disclosed the compensation it provided to persons in exchange for their promotional efforts; and (iii) that Lokai engaged in inequitable misconduct in obtaining a design patent. Affirmative Defenses, ¶ 2. Indeed, the claim of inequitable misconduct is demonstrably unrelated to any conduct at issue in Lokai's claim, because it previously was raised as an affirmative defense to Lokai's patent infringement claim, which was removed when Lokai filed its Sixth Amended Complaint. (Defendants' Answer and Counterclaims to Fifth Amended Complaint, Dkt. # 104, at 23-28.) Defendants have simply transferred their affirmative defense to the patent claim to a different, unrelated claim.

Because none of those allegations is the same as the conduct that Lokai has asserted in the Complaint, the unclean hands defense must be stricken as a matter of law. *Radiancy, Inc. v. Viatek Consumer Prods. Grp., Inc.*, 138 F. Supp. 3d 303, 318-19 (S.D.N.Y. 2014) (striking unclean hands defense to the extent it is based on a claim that is not the same as the conduct asserted in the Complaint). In *Radiancy*, an unclean hands defense was raised to the counterclaims on multiple grounds: that the defendant was using the plaintiff's trademark in its website metadata, improperly directing Google searches toward its product, and making false statements with respect to the advertising of a hair removal product. *Id*. Although the court in *Radiancy* concluded that portions of the unclean hands defense did match allegations in the counterclaims, it struck the portion of the defense alleging a false advertisement of the hair product because there was no corresponding counterclaim. *Id*. Here, where none of the conduct alleged in the unclean hands defense pertains to Lokai's allegations in the Complaint, the entire defense should be stricken.

### POINT III     TTUSA's Tortious Interference Claims Should Be Dismissed

TTUSA's proposed tortious interference counterclaims (7th, 8th, and 9th Counterclaims) are defective because they fail adequately to identify the contracts or business relationship with which Lokai interfered and the facts showing how Lokai's alleged conduct caused such contract or business relationship to be terminated. Counterclaims, ¶¶ 73-91. *See, e.g., Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 366-69 (S.D.N.Y. 2012) (dismissing claims for tortious interference with contract and business relations where plaintiff did not identify specific information concerning the contracts or business relationships with which the defendant interfered).

TTUSA has not adequately pleaded its tortious interference claims. TTUSA specifically

identifies only two entities with which it allegedly had contractual or business relationships: Rue21 and Five Below. *E.g.*, Counterclaims, ¶ 85. However, it fails to provide specific information concerning its relationship with either of these entities. TTUSA does not identify any of the terms of its supposed contracts, nor does it set forth facts that give rise to a basis for believing it had a reasonable expectation of any future business from either entity. Moreover, TTUSA fails to allege facts showing how Lokai's conduct disrupted these contractual or business relationships.

Accordingly, TTUSA's tortious interference counterclaims should be dismissed.

## POINT IV     TTUSA's 35 U.S.C. § 285 Claim Should Be Dismissed

TTUSA's First Counterclaim is a cause of action seeking attorney's fees pursuant to 35 U.S.C. § 285. However, that statute is nothing more than a fee-shifting provision that may permit the prevailing party to recover attorney's fees in connection with a patent infringement claim. *See, e.g., Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. ___, 134 S. Ct. 1749, 1753 (2014) (characterizing 35 U.S.C. § 285 as a "fee-shifting provision"). No separate cause of action exists under 35 U.S.C. § 285. *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA)(RLM), 2010 WL 1257803, at *3 (E.D.N.Y. Mar. 26, 2010) (dismissing 35 U.S.C. § 285 claim because the plaintiff "should not be permitted to include a separate count based on exceptional case, or the allegations underlying that nonexistent cause of action.") Rather, "a party pleading 'exceptional case' is simply noting its intention to move for attorney fees at the conclusion of the case, pursuant to 35 U.S.C. § 285." *Id. See also InteraXon Inc. v. NeuroTek, LLC*, No. 15-cv-05290-KAW, 2017 WL 24721, at *2 (N.D. Cal. Jan. 3, 2017) (denying leave to amend the complaint to assert a new cause of action for attorney's fees as futile because "[a]n assertion of an 'exceptional case' under 35 U.S.C. § 285 is not a separate cause of

action").

"A claim for attorney's fees . . . must be made by motion." Fed. R. Civ. P. 54(d)(2). That motion can only be made at the conclusion of the case, as the application can only be made by a "prevailing party." 35 U.S.C. § 285. While Defendants are free to make an application for such fees at the conclusion of this case, and indeed have included a request for attorney's fees in their prayer for relief (Answer, at 44), TTUSA's counterclaim must be dismissed as a "nonexistent cause of action," whose only purpose appears to be an attempt to smear Lokai.

## Conclusion

For the foregoing reasons, Lokai's motion to dismiss should be granted in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: June 21, 2017

TARTER KRINSKY & DROGIN LLP

By: /s/ Joel H. Rosner
        Joel H. Rosner

**CERTIFICATE OF SERVICE**

I certify that on June 21, 2017, I caused the foregoing document to be filed using the CM/ECF System in the United States District Court for Southern District of New York, which caused the Defendants to be served by electronic mail, as more fully reflected on the notice of electronic filing.

Dated: June 21, 2017

           _/s/_ Joel H. Rosner