## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LOKAI HOLDINGS LLC,**<br><br>   **Plaintiff,**<br><br>v.<br><br>**TWIN TIGER USA LLC, TWIN TIGER WORLD MARKETS LTD., RORY COPPOCK and TROY COPPOCK,**<br><br>   **Defendants.** | **Civil Action No. 15-cv-9363**<br><br>**FIRST AMENDED ANSWER OF DEFENDANTS TWIN TIGER USA LLC, TWIN TIGER WORLD MARKETS LTD., RORY COPPOCK and TROY COPPOCK TO PLAINTIFF'S SIXTH AMENDED COMPLAINT; COUNTERCLAIMS**<br><br>**JURY TRIAL DEMANDED ECF CASE** |

## ANSWER

Defendants Twin Tiger USA LLC ("TTUSA"), Twin Tiger World Markets Ltd. ("TTWM"), Rory Coppock, and Troy Coppock (together, "Defendants") hereby answer Plaintiff Lokai Holdings, LLC's ("Plaintiff") Sixth Amended Complaint ("SAC"). Each numbered paragraph herein responds to the allegations in the corresponding numbered paragraph of the SAC. Except as expressly admitted herein, the allegations in the SAC are denied.

## ANSWER TO ALLEGATIONS
## REGARDING NATURE OF THE ACTION

1.     Defendants admit that the SAC purports to allege claims for trade dress infringement and unfair competition. Defendants deny that Plaintiff states any valid claim upon which relief can be granted.

## ANSWER TO ALLEGATIONS
## REGARDING JURISDICTION AND VENUE

2.     Defendants admit that this Court has subject matter jurisdiction. Defendants deny the remaining allegations.

3.     Defendants deny the allegations.

## ANSWER TO ALLEGATIONS REGARDING THE PARTIES

4.     Defendants admit the allegations.

5.     Defendants admit that Twin Tiger USA LLC ("TTUSA") is a California limited liability company formerly based in Redondo Beach, California. Defendants admit that TTUSA currently has a place of business near Los Angeles, California.

6.     Defendants deny the allegations.

7.     Defendants admit that Rory Coppock and Troy Coppock are individuals and former residents of Redondo Beach, California. Defendants admit that Rory Coppock and Troy Coppock are members and managers of TTUSA. Defendants admit that Rory Coppock and Troy Coppock are shareholders of Twin Tiger World Markets, Ltd. ("TTWM"). Defendants deny the allegation that any of them engaged in or directed others to engage in infringing activities.

8.     Defendants deny the allegations.

9.     Defendants deny the allegations.

10.    Defendants deny the allegations.

## ANSWER TO ALLEGATIONS
## REGARDING LOKAI AND ITS BUSINESS

11.     Defendants deny the allegations.

12.     Defendants deny the allegation that Plaintiff began offering and selling the bracelets at issue in this case in 2013. Defendants also deny the allegation that all of the beaded bracelets offered and sold by Lokai have featured the same alleged trade dress. Defendants deny that paragraph 12 accurately describes the alleged trade dress. In particular, the bracelets at issue in this case are not made of "beads," as that term is commonly understood. Furthermore, Defendants allege that Plaintiff has never sold any bracelets featuring a "single pair of contrasting colored beads diametrically opposed to each other." Rather, Plaintiff's bracelets have only ever featured a black spherical "bead" element diametrically opposed to a white spherical "bead" element. Defendants admit that the bracelet pictured in Exhibit 1 to the SAC depicts the design of the Lokai bracelet at issue in this case. Defendants state that the photographs in all respects speak for themselves. Defendants deny that Plaintiff is the owner of any trade dress rights.

13.     Defendants admit the allegation that the contrasting beads of Plaintiff's bracelet are intended to represent balance and the cycle of life. Defendants deny that the Lokai bracelet features a "dark bead" and a "light colored bead." Rather, the Lokai bracelet has always featured only a black "bead" element opposite a white "bead" element. Defendants also admit that as of the filing of this Answer, the website https://lokai.com/store/classic-lokai contains the following text: "Each Lokai is infused with elements from the highest and lowest points on Earth. The white bead carries water from Mt. Everest, and the black bead contains mud from the Dead Sea. These extreme elements are a reminder to the wearer to find balance – staying

humble during life's highs and hopeful during its lows." Defendants deny that the text has been on the website unaltered since June 2013. Defendants also lack knowledge or information sufficient to form a belief as to whether all of the products Plaintiff has sold were actually infused with mud from the Dead Sea and/or water from Mount Everest. Defendants deny that Plaintiff's products are capable of permanently holding (or "carrying") water from Mount Everest. Defendants allege that any water infused in the bracelets either leaks out or evaporates from the product over time, including in many instances prior to sale.

14.    Defendants admit that as of the filing of this Answer, the hangtags on Plaintiff's bracelets contain the words "FIND YOUR BALANCE." Defendants lack knowledge or information sufficient to form a belief as to the content of hangtags dating back to June 2013, and on that basis deny the allegations.

15.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and on that basis deny them.

16.    Defendants deny the allegations.

17.    Defendants deny the allegations.

18.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and on that basis deny them.

19.    Defendants deny the allegations.

20.    Defendants deny the allegations.

## ANSWER TO ALLEGATIONS REGARDING
## DEFENDANTS' ALLEGED UNLAWFUL ACTIVITIES

21.    Defendants deny the allegations.

22.    Defendants admit that TTUSA offered and sold the bracelets pictured in Exhibit 13 beginning in 2015, and ending in or around May

2016. Defendants deny that the description of the bracelets offered by Plaintiff is accurate. In particular, the bracelets do not feature "a single pair of contrasting colored beads diametrically opposed to each other." Rather, each bracelet featured a green "bead" diametrically opposed to a grey "bead." Defendants deny all remaining allegations in this paragraph.

23.    Defendants deny the allegations regarding the text on the website www.balanceyourlifebracelet.com, and the text on the hangtags. Exhibits 13 and 14 are out-of-date copies of previous versions of the website and hangtags.

24.    Defendants admit that they previously used the phrases "earth from below sea level" and "water from the mountains" in connection with their Life Bracelets. Defendants deny that those phrases appear in current promotional emails and materials. Defendants deny that reasonable retailers and consumers have made purchases of Life Bracelets based on those phrases.

25.    Defendants deny the allegations of infringement. Defendants admit that at the time TTUSA began selling the accused products, Troy Coppock and Rory Coppock were aware of multiple companies selling similar bracelets, including but not limited to Plaintiff. Defendants deny that they knew that Plaintiff claimed exclusive rights to the bracelet design at that time. Defendants further deny that Plaintiff owns any exclusive rights to the bracelet design.

26.    Defendants admit that they did not seek or obtain Plaintiff's consent to sell the accused products. Defendants deny that their products have ever featured the alleged trade dress. Defendants further deny that such consent was necessary on the grounds that Plaintiff's asserted trade dress is invalid.

27.     Defendants deny that the accused products are available for sale at www.twintigerusa.com. Defendants admit that previously a user could follow a link from www.twintigerusa.com to www.balanceyourlifebracelet.com. However, the website www.twintigerusa.com is currently inactive. Defendants admit that Rory Coppock and Troy Coppock are managers of TTUSA, and that in their capacity as managers they were involved in the decision to offer the accused products for sale online at www.balanceyourlifebracelet.com.

28.     Defendants admit that as managers of TTUSA, Rory Coppock and Troy Coppock, participated in the design, development, marketing and sale of the accused products in the past. Defendants deny that they continue to market or sell the accused products.

29.     Defendants deny the allegations that the allegedly infringing trade dress is "nearly identical" to the alleged Lokai trade dress. TTUSA's previous bracelet design was similar in some respects to the Lokai bracelet design, but the designs were never "nearly identical." Defendants further deny that Plaintiff has any valid trade dress rights to the bracelet design.

30.     Defendants deny the allegations.

31.     Defendants deny the allegations.

32.     Defendants deny the allegations.

33.     Defendants deny the allegations.

34.     Defendants admit that they did not seek or obtain Lokai's permission to sell bracelets. Defendants deny that they infringed any rights belonging to Plaintiff, or that such permission was necessary.

35.     Defendants admit that they compete with Plaintiff. Defendants otherwise deny the allegations.

36.     Defendants deny the allegations.

37.    Defendants deny the allegations.

## ANSWER TO FIRST CAUSE OF ACTION

## For Unfair Competition (15 U.S.C. § 1125(a))

38.    Defendants repeat and re-allege the allegations of paragraphs 1 through 37 as if fully set forth herein.

39.    Defendants admit that Plaintiff purports to allege a claim for false designation of origin, false description, and false representation under the Trademark Act.

40.    Defendants deny the allegations.

41.    Defendants deny the allegations.

42.    Defendants deny the allegations.

43.    Defendants deny the allegations.

44.    Defendants deny the allegations.

45.    Defendants deny the allegations.

46.    Defendants deny the allegations.

## ANSWER TO SECOND CAUSE OF ACTION

## False Advertising under 15 U.S.C. § 1125(a)

47.    Defendants repeat and re-allege the allegations of paragraphs 1 through 46 as if fully set forth herein.

48.    Defendants admit that Plaintiff purports to allege a claim for false advertising under the Trademark Act.

49.    Defendants deny the allegations.

50.    Defendants deny the allegations.

51.    Defendants deny the allegations.

52.    Defendants deny the allegations.

53.    Defendants deny the allegations.

54.    Defendants deny the allegations.

55.     Defendants deny the allegations.

## ANSWER TO THIRD CAUSE OF ACTION

### Unfair Competition under California Law

### (Cal. Bus. & Prof. Code §§ 17200 et seq.)

56.     Defendants repeat and re-allege the allegations of paragraphs 1 through 55 as if fully set forth herein.

57.     Defendants deny the allegations.

58.     Defendants deny the allegations.

59.     Defendants deny the allegations.

60.     Defendants deny the allegations.

61.     Defendants deny the allegations.

62.     Defendants deny the allegations.

63.     Defendants deny the allegations.

## ANSWER TO FOURTH CAUSE OF ACTION

### False or Misleading Advertising under California Law

### (Cal. Bus. & Prof. Code §§ 17200 et seq.)

64.     Defendants repeat and re-allege the allegations of paragraphs 1 through 63 as if fully set forth herein.

65.     Defendants deny the allegations.

66.     Defendants deny the allegations.

67.     Defendants deny the allegations.

68.     Defendants deny the allegations.

69.     Defendants deny the allegations.

70.     Defendants deny the allegations.

71.     Defendants deny the allegations.

## ANSWER TO FIFTH CAUSE OF ACTION

### Common Law Unfair Competition

72.    Defendants repeat and re-allege the allegations of paragraphs 1 through 71 as if fully set forth herein.

73.    Defendants deny the allegations.

74.    Defendants deny the allegations.

75.    Defendants deny the allegations.

76.    Defendants deny the allegations.

77.    Defendants deny the allegations.

78.    Defendants deny the allegations.

79.    Defendants deny the allegations.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses to Plaintiff's Sixth Amended Complaint.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

1.    The Complaint fails to state a claim against defendant upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Fair Use)

2.    Assuming *arguendo* that Plaintiff is the owner of valid trade dress for its bracelet design and that Defendants' prior use of an allegedly similar design was likely to cause confusion or mistake (all of which Defendants deny), Defendants' use of the design constituted a fair use. Defendants utilized the design merely for its functional qualities, and not for any trademark purpose. Furthermore, products sold by Defendants included

9

materials identifying the goods as "Life Bracelets," rather than Lokai bracelets, including hangtags and labels.

## THIRD AFFIRMATIVE DEFENSE

### (Trade Dress Invalidity)

3.      Without assuming the burden of proof on this issue, Defendants allege that the asserted trade dress is invalid. The asserted trade dress is invalid because, without limitation, it is functional, and because it is not distinctive.

## COUNTERCLAIMS

Defendants Twin Tiger USA, LLC ("TTUSA"), Twin Tiger World Markets, Ltd. ("TTWM"), Rory Coppock and Troy Coppock assert the following counterclaim against Plaintiff Lokai Holdings, LLC ("Plaintiff" or "Counter-Defendant").

## FIRST CAUSE OF ACTION

### (For Declaration of Non-infringement of Trademark)

1.      The design of Plaintiff's Lokai bracelet is primarily functional. The design is essential to the use or purpose of the article and, as such, cannot be protected as trade dress. Moreover, granting Plaintiff exclusive rights to the design would put competitors, including TTUSA, at a significant non-reputation related competitive disadvantage.

2.      Furthermore, the design of Plaintiff's Lokai bracelet is not inherently distinctive and has not obtained secondary meaning. Therefore, Plaintiff could not assert trade dress rights even if the design was not functional.

3.    Finally, TTUSA's use of a bracelet design similar in some respects to Plaintiff's Lokai bracelet has not caused and is not likely to cause confusion, or mistake, or to deceive consumers regarding the source of the product. First, to the extent Plaintiff's bracelet design has acquired any secondary meaning, its trade dress rights are limited to a bracelet with a single black "bead" opposite a single white "bead." TTUSA has never used that color combination on its bracelets. Moreover, both Plaintiff's and TTUSA's products are clearly marked with their respective trademarks. Plaintiff marks each of its products with a teardrop symbol, whereas TTUSA's products are clearly marked with an Ankh symbol. Finally, Plaintiff's products are sold with a hangtag bearing the name "Lokai," whereas TTUSA's products are sold with a hangtag bearing the words "Life Bracelet" or "Balance Bracelet." Nothing on TTUSA's products indicates that they originate from Plaintiff.

4.    While earlier designs of some of the products sold by TTUSA (namely, the "Balance Bracelet," "Life Bracelet," "Glow Life Bracelet," and "Glitter Life Bracelet") are similar in some respects to the design of Plaintiff's Lokai bracelet, that similarity was dictated by the function of the product—namely, to remind the wearer to live a balanced life. TTUSA has at all times acted in good faith to differentiate its products from Plaintiff's products, including by marking its products with its own trademarks, and by using different colors for the contrasting beads. In particular, TTUSA's earlier Life Bracelet design utilized the colors green and grey to identify the beads containing earth and water. Plaintiff's Lokai bracelet, on the other hand, uses the colors white and black.

5.    Because the product design is functional and non-distinctive, and because TTUSA's conduct is not likely to cause confusion, TTUSA

respectfully requests a declaration that its use of the "Life Bracelet" and "Balance Bracelet" designs was not infringing of any trade dress rights owned by Plaintiff.

6.     In addition to the "Life" and "Balance" bracelets pictured in Exhibit 13 attached to Plaintiff's Sixth Amended Complaint, which are alleged to infringe Plaintiff's rights, TTUSA has sold a variety of other bracelet designs. Although Plaintiff's Sixth Amended Complaint does not allege that these other designs infringe its rights, TTUSA seeks a declaration that each of these designs is not infringing of any trade dress rights owned by Plaintiff. A representative image of each design for which TTUSA seeks a declaration of non-infringement is set forth in the table below:

| Style | Picture |
|---|---|
| "Best Friends" (previous and current version) (colored beads contain earth) |  |
| "Breast Cancer Awareness" (grey and pink beads contain earth) |  |



| | |
|---|---|
| "Energy & Focus" (orange beads contain lava rock) | |
| "Equality" (colored beads contain different colors of sand) | |
| "Gold & Silver" (colored beads contain earth) | |

| | |
|---|---|
| "Golf" (orange and silver beads contain hematite stone) | |
| "Health & Wealth" (grey and purple beads contain blue turquoise) | |
| "Hopes & Dreams" (purple beads contain Amazonite) | |
| "Inspiration & Creativity" (blue beads contain quartz) | |



| "Mind, Body & Soul" (grey beads contain howlite stone) | |
| "Multi Color Life" (grey and black beads contain earth) | |
| "One Love Life" (green, red and yellow beads contain earth) | |
| "Original Life" (current design, including Glitter and Glow in the Dark) (green and grey beads contain earth) | |

| | |
|---|---|
| "Peace, Love & Success" (green beads contain jade stone) |  |
| "Performance & Endurance" (navy and yellow beads contain red jasper) |  |
| "Protection & Healing" (yellow beads contain amber) |  |
| "Red, White & Blue" (accent beads contain earth) |  |
| "Strength & Stability" (red beads contain petrified wood) |  |

| "Yogi" (navy and pink beads contain amethyst) |  |
|---|---|

### SECOND CAUSE OF ACTION

**(False or Misleading Advertising under 15 U.S.C. § 1125(a))**

7.     TTUSA incorporates the allegations in its Second Affirmative Defense (Unclean Hands) as if fully set forth herein.

8.     This claim arises under the provisions of Section 43(a) of the Lanham Act and alleges Counter-Defendant's use in commercial advertising, promotions, and online and social media marketing campaigns of false or misleading descriptions or representations of fact

a.     which misrepresent the nature, characteristics, qualities, or geographic origin of Lokai's goods; and

b.     which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of various celebrities and/or other endorsers with the Lokai bracelet, or as to the sponsorship or approval of the Lokai bracelet by such celebrities and consumers.

9.     Lokai advertises its "Lokai" bracelet using the following language: "Each Lokai is infused with elements from the highest and lowest points on Earth. The white bead carries water from Mt. Everest, and the black bead contains mud from the Dead Sea. These extreme elements are a reminder to the wearer to find balance – staying humble during life's highs and hopeful during its lows." This statement appears on Lokai's website,

lokai.com/store/classic-lokai, as well as on the hangtags and other packaging of Lokai bracelets available for purchase in brick-and-mortar stores.

10.     Retailers and consumers viewing Lokai's statement that the "white bead carries water from Mt. Everest" reasonably interpret this statement to mean that the Lokai bracelet contains an actual drop of water from Mount Everest at the time of purchase. These retailers and consumers also interpret the statement to mean that the Lokai bracelet is capable of containing water permanently, such that the drop of water from Mount Everest remains trapped in the bracelet.

11.     The Lokai bracelet, however, often does not contain any water at the time of purchase, and it is incapable of containing water permanently. In many instances, by the time the bracelets are sold any water that may have been previously injected into them will have evaporated. To the extent the water has not completely evaporated by the time of sale, such water evaporates shortly thereafter.

12.     To the extent Lokai's statement that the "white bead [of the Lokai bracelet] carries water from Mt. Everest" is interpreted to mean that water from Mt. Everest remains permanently in the white bead, it is literally false. To the extent the statement can be reasonably interpreted in any other way, it is impliedly false and misleading. Lokai's statement is likely to deceive retailers and consumers as to the nature, characteristics, and quality of the Lokai bracelet.

13.     Lokai's false and misleading statements are material to reasonable retailers and consumers. To the extent Lokai has had success in selling its bracelets, that success has been largely based on its message of finding balance in life, which message is conveyed by using water from Mt. Everest as a reminder to the wearer to stay "humble during life's highs," and

using mud from the Dead sea to remind the wearer to stay "hopeful during its lows." Many of Lokai's customers have been disappointed to discover after purchase that their bracelets do not actually contain water from Mt. Everest. Had these customers known that the water evaporates, they would not have purchased the bracelet.

14.     Retailers and consumers have reasonably relied on Lokai's statement that the "white bead [of the Lokai bracelet] carries water from Mt. Everest" in making decisions to purchase the Lokai bracelet. These customers based their purchase decision on the mistaken belief that the Lokai bracelet contained and is capable of permanently containing water from Mount Everest.

15.     Retailers and consumers who are potential retailers and customers of TTUSA have purchased the Lokai bracelet instead of TTUSA's products based on the mistaken belief that the Lokai bracelet contains and is capable of permanently containing water from Mount Everest.

16.     As a direct and proximate result of Counter-Defendant's unlawful acts, TTUSA has suffered and will continue to suffer significant monetary and reputational injury, including lost sales and a lessening of goodwill associated with its products, in an amount to be proven at trial.  In addition, Counter-Defendant is entitled to a disgorgement of Lokai's profits to compensate Counter-Defendant for its damages, to prevent unjust enrichment, and/or to deter Lokai from its wrongful conduct to protect the public.

## THIRD CAUSE OF ACTION

## (Unfair Competition under California Law (Cal. Bus. & Prof. Code §§ 17200 et seq.))

17.    TTUSA incorporates the allegations in its Second Affirmative Defense (Unclean Hands) and Second Cause of Action as if fully set forth herein.

18.    Beginning in 2014, Counter-Defendant has been engaging in a pattern of unlawful conduct to promote Counter-Defendant's products by deceiving retailers and consumers.

19.    As alleged above, despite Counter-Defendant's knowledge that any water in the Lokai bracelet evaporates, Counter-Defendant has persisted in representing that its Lokai bracelet "carries" water from Mount Everest. Counter-Defendant thus has made false and/or misleading statements which were and are known, or which by the exercise of reasonable care, should have been and should be known to Counter-Defendant to be untrue and/or misleading in violation of California Business and Professions Code § 17500 *et seq*.

20.    As alleged above, retailers and consumers viewing Counter-Defendant's statement that the "white bead carries water from Mt. Everest" reasonably interpret this statement to mean that the Lokai bracelet contains an actual drop of water from Mount Everest at the time of purchase. These retailers and consumers also interpret the statement to mean that the Lokai bracelet is capable of containing water permanently, such that the drop of water from Mount Everest remains trapped in the bracelet. Thus, even if Lokai's statement can be reasonably interpreted to mean something other than that the bracelet contains and is capable of permanently holding an

actual drop of water from Mt. Everest, the statement is at least impliedly false.

21.    Lokai's false and misleading statements are material to reasonable retailers and consumers. As alleged above, the presence of water from Mount Everest in the bracelet is essential to the symbolic message conveyed to the wearer, and represents a significant portion of the product's price. Had customers known that the bracelet actually does not contain any water from Mt. Everest (or that if it does at the time of purchase, the water would evaporate shortly afterward) they would not have purchased the bracelet, or would not have paid the high price Lokai charges for its bracelets.

22.    Lokai has also engaged in unfair competition with respect to its practice of advertising through celebrity and influencer endorsements under circumstances suggesting that the endorsers' opinions are independent when in fact the endorsers are compensated.

23.    Lokai pays or otherwise compensates various celebrities and third party influencers to promote its product, including but not limited to by wearing the product in public and at publicized events, and by posting images of the product in social media along with captions endorsing or otherwise promoting the product.

24.    Companies who advertise on social media are required by law to do so in a fair and non-deceptive manner, including by disclosing the existence of a material connection between the company and any person who endorses the company's goods or services on their personal social media account.

25.    From 2014 until the present, Lokai and its agents have engaged in an aggressive campaign to "get press" online and in social media

featuring photographs of famous actors, musicians, athletes, celebrities, and other influential persons wearing the Lokai bracelet. These online and social media outlets featured photographs of celebrities wearing the Lokai bracelet. Plaintiff and Counter-Defendant attached representative samples of such online and social media as Exhibits 4-12 to its Sixth Amended Complaint.

26.    On several occasions Lokai has through its representatives, including Steven Izen, claimed that the Lokai bracelet is popular among celebrities, and that these celebrities are not paid for their support.

27.    These statements were deceptive and misleading, as many of the celebrities and influencers who have supported Lokai products actually were paid for such support.

28.    As one example, Lokai paid Zoe Saldana to pose for pictures of her wearing the Lokai bracelet in public. The photoshoot was designed to suggest that the photographs were not posed, but were merely "paparazzi style" photos taken of Ms. Saldana going about her daily life. Lokai then arranged for the photos to be published in popular tabloid magazines to give the impression that Ms. Saldana is an unpaid supporter of Lokai bracelets.

29.    As another example, Lokai has paid Kylie Jenner, Kris Jenner, Khloe Kardashian, and other members of their family hundreds of thousands of dollars to post images of them wearing Lokai products on their personal social media feeds along with captions endorsing the products and urging their followers to purchase these products as well.

30.    Lokai has also paid or otherwise compensated numerous other celebrities and influencers to post about Lokai products on their personal social media accounts, including Instagram, Twitter, and blogs. Lokai did not require or encourage these persons to disclose the fact that they were being compensated in connection with their endorsements, and in at least

some instances Lokai included language in the contracts prohibiting the endorsers from disclosing that they were being compensated for the endorsement.

31.    The acts and omissions of Lokai and endorsers acting on its behalf have been and are likely to deceive consumers as to the affiliation, connection, or association of various celebrities and/or other endorsers with Lokai, or as to the sponsorship or approval of Lokai by such celebrities and endorsers. A survey of ordinary consumers viewing certain Instagram posts endorsing Lokai products confirmed that without disclosure of the connection between Lokai and the endorser, significant portions of the consuming public believe the endorsers are not paid for their endorsements.

32.    Whether a celebrity or other influential person is paid for an endorsement of a product is a material fact to reasonable consumers. A reasonable consumer is likely to give greater attention to a communication that is not perceived as an advertisement, and to give greater weight to the opinions of an endorser if the consumer believes the endorser is not paid for the endorsement than if the consumer believes the endorser is paid or otherwise compensated for the endorsement. It is for this reason that the Federal Trade Commission's Guides Concerning Use of Endorsements and Testimonials in Advertising ("FTC Guidelines") expressly require the disclosure by clear and conspicuous language that is easily understood and unambiguous of any "material connection" between a company and a person endorsing that company's goods or services. *See* 16 C.F.R. § 255.0 et seq.

33.    The deceptive acts of Lokai and its endorsers have influenced reasonable retailers and consumers to purchase the Lokai bracelet, and are likely to continue to influence potential customers to purchase Lokai products. Reasonable retailers and consumers have purchased Lokai

bracelets based on their mistaken belief that celebrities and other influencers endorsed these products because of their independent and objective opinions, and not because they were paid by Lokai to endorse the products.

34.   Retailers and consumers who are potential retailers and customers of TTUSA have purchased the Lokai bracelet instead of TTUSA's products based on the mistaken belief that the Lokai bracelet was endorsed or approved by celebrities and/or other endorsers who did not have a material connection with Lokai.

35.   Counter-Defendant's failure to make the requisite disclosures under the FTC Guidelines is unlawful. Moreover, because competitors are not lawfully permitted to advertise in this same way, Lokai's practice, if not restrained, will give it an unfair advantage over competitors. Furthermore, Lokai's conduct is likely to deceive members of the public and thus constitutes a fraudulent business practice. In short, Lokai's acts and omissions constitute unfair competition as defined in California Business & Professions Code § 17200.

36.   TTUSA has suffered injury in fact and has lost money in the form of diverted sales and lost sales profits as a result of Counter-Defendant's unlawful business practices.

37.   Counter-Defendant's wrongful acts have permitted or will permit Counter-Defendant to make substantial sales and profits by diverting consumers away from TTUSA's products and to Lokai's products by way of causing such consumers to believe incorrectly that the Lokai bracelets contain water from Mount Everest and that celebrities and/or other endorsers who wear and promote the Lokai bracelets online or in social media did not receive compensation from Lokai.

38.     TTUSA has no adequate remedy at law for Counter-Defendant's acts of unfair competition. Those violations will continue unless this Court enjoins Counter-Defendant and grants any further relief necessary to restore to TTUSA any financial interest which Counter-Defendant may have acquired by means of its unfair competition.

## FOURTH CAUSE OF ACTION

### (False Advertising (Cal. Bus. & Prof. C. § 17500 et seq.))

39.     TTUSA incorporates the allegations in its Second and Third Causes of Action as if fully set forth herein.

40.     As alleged above, despite Counter-Defendant's knowledge that any water in the Lokai bracelet evaporates, Counter-Defendant has persisted in making statements that its Lokai bracelet "carries" water from Mount Everest.

41.     Counter-Defendant made the foregoing statements with the intent directly or indirectly to dispose of personal property—namely, units of the Lokai bracelet—or to induce the public to enter into purchases of such property.

42.     Counter-Defendant made, disseminated, and/or caused to be made or disseminated the foregoing statements before the public in California in a variety of publications and advertising devices, including but not limited to its website, social media accounts, and traditional media.

43.     The statements by Counter-Defendant that the Lokai bracelet "carries" water from Mount Everest are untrue and/or misleading, or by the exercise of reasonable care should have been known to Counter-Defendant to be untrue and/or misleading. These statements were made by Counter-Defendant and its employees as part of a plan or scheme with the intent not to sell the property (i.e., the Lokai bracelets) as advertised. As such, pursuant

to California Business and Professions Code § 17500 it was and is unlawful for Counter-Defendant or its employees to make, disseminate, and/or cause to be made or disseminated those statements.

44.    As alleged above, retailers and consumers viewing Counter-Defendant's statement that the "white bead carries water from Mt. Everest" reasonably interpret this statement to mean that the Lokai bracelet contains an actual drop of water from Mount Everest at the time of purchase. These retailers and consumers also interpret the statement to mean that the Lokai bracelet is capable of containing water permanently, such that the drop of water from Mount Everest remains trapped in the bracelet. Thus, even if Lokai's statement can be reasonably interpreted to mean something other than that the bracelet contains and is capable of permanently holding an actual drop of water from Mt. Everest, the statement is at least impliedly false.

45.    Lokai's false and misleading statements are material to reasonable retailers and consumers. As alleged above, the presence of water from Mount Everest in the bracelet is essential to the symbolic message conveyed to the wearer, and represents a significant portion of the product's price. Had customers known that the bracelet actually does not contain any water from Mt. Everest (or that if it does at the time of purchase, the water would evaporate shortly afterward) they would not have purchased the bracelet, or would not have paid the high price Lokai charges for its bracelets.

46.    TTUSA has suffered injury in fact and has lost money in the form of diverted sales and lost sales profits as a result of Counter-Defendant's false and/or misleading advertisements in violation of Cal. Bus. & Prof. C. § 17500 *et seq.*

47.    Counter-Defendant's acts of false advertising have permitted or will permit Counter-Defendant to make substantial sales and profits by diverting consumers away from TTUSA's products and to Lokai's products by way of causing such consumers to believe incorrectly that the Lokai bracelets are capable of containing and in fact do contain water from Mount Everest.

48.    TTUSA has no adequate remedy at law for Counter-Defendant's acts of false advertising. Those violations will continue unless this Court enjoins Counter-Defendant and grants any further relief necessary to restore to TTUSA any financial interest which Counter-Defendant may have acquired by means of its unfair competition. Therefore, pursuant to Cal. Bus. & Prof. C. §17535 TTUSA seeks an order enjoining Counter-Defendant from making or disseminating, or causing to be made or disseminated any statement to the effect that the Lokai bracelet "carries water from Mount Everest."

## FIFTH CAUSE OF ACTION

### (Unfair and Deceptive Business Practices (N.Y. Gen. Bus. L. § 349))

49.    TTUSA incorporates the allegations in its Second, Third, and Fourth Causes of Action as if fully set forth herein.

50.    Counter-defendant's conduct described herein constitutes deceptive acts or practices or false advertising in the conduct of business, trade or commerce or on the furnishing of services in New York, which affects the public interest under N.Y. Gen. Bus. L. § 349.

51.    As alleged herein, by advertising, marketing, distributing, and selling the Lokai bracelets with false or misleading claims and representations that its bracelet "carries water from Mount Everest" when, in fact, the bracelet contains no water, much less from Mount Everest, Counter-

Defendant engaged in, and continues to engage in, deceptive acts and practices.

52.    The misleading statements and omissions of Counter-Defendant alleged herein were material to reasonable consumers. Reasonable consumers may not have purchased Lokai bracelets had they known that the bracelets do not actually "carry water from Mount Everest."

53.    Counter-Defendant's conduct alleged herein was part of a plan, scheme, and course of conduct which was consumer-oriented in that it influenced consumers to purchase products through misrepresentations and deception.

54.    As a direct and proximate result of Counter-Defendant's violation of N.Y. Gen. Bus. L. § 349, both TTUSA and New York consumers were injured and suffered damages.

55.    The injuries to TTUSA and New York consumers were foreseeable to Counter-Defendant and, thus Counter-Defendant's actions were unconscionable and unreasonable.

56.    Counter-Defendant is liable for damages sustained by TTUSA to the maximum extent allowable under N.Y. Gen. Bus. L. § 349.

57.    Pursuant to N.Y. Gen. Bus. L. § 349(h), TTUSA further seeks an Order enjoining Counter-Defendant from continuing to engage in unlawful acts or practices, false advertising, and any other acts prohibited by law in the State of New York, including those set forth in this pleading.

## **PRAYER FOR RELIEF**

Wherefore, Defendants pray for relief as follows:

1.    That Plaintiff take nothing by its Sixth Amended Complaint, and that judgment be entered in favor of Defendants;

2.     That Defendants be awarded attorneys' fees as the prevailing party with respect to Plaintiff's claim for patent infringement, which was previously dismissed with prejudice.

3.     That a judgment be entered declaring that Plaintiff does not own any trade dress rights to the design of the Lokai Bracelet or, in the alternative, that TTUSA's use of the Life Bracelet design and other bracelet designs do not infringe any of Plaintiff's trade dress rights.

4.     That Lokai and its officers, directors, partners, employees, agents, servants, attorneys, and those persons in active concert or participation with them are preliminarily and permanently enjoined from:

    a.     Using in connection with the sale of any goods or services or the dissemination or distribution of advertising, promotional, or marketing materials, including social media, a false or misleading description or representation including representations that the Lokai bracelet carries water from Mount Everest;

    b.     Using in connection with the sale of any goods or services or the dissemination or distribution of advertising, promotional, or marketing materials, including social media, celebrity or other endorsements without disclosing Lokai's material connections with the celebrities or other individuals, including Lokai's payment and provision of free product to such individuals; and

    c.     Unfairly competing with TTUSA.

5.     That Lokai be required to account to TTUSA for all profits resulting from Lokai's unlawful, fraudulent, unfair, and/or deceptive acts or practices, including its unfair competition and false advertising and that such award of profits to Defendants be increased by the Court as provided by law.

6.     That TTUSA have a recovery from Lokai of all damages sustained by TTUSA resulting from Lokai's unlawful, fraudulent, unfair, and/or deceptive acts and practices and unfair competition.

7.     For an award of costs, including reasonable attorneys' fees.

8.     For punitive damages as allowed by law;

9.     For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Defendants demand a trial by jury on all issues so triable.

Dated: May 24, 2018                    Respectfully submitted,

                                       **CALL & JENSEN APC**


                                       By:  */s/ Scott P. Shaw*
                                       Scott P. Shaw
                                        sshaw@calljensen.com
                                       Samuel G. Brooks
                                        sbrooks@calljensen.com
                                       Joshua G. Simon
                                        jsimon@calljensen.com
                                       610 Newport Center Drive
                                       Suite 700
                                       Newport Beach, CA 92660
                                       Telephone: (949) 717-3000

                                       *Attorneys for Defendants*